**NONCONFIDENTIAL**

16-2539, 16-2563

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

CISCO SYSTEMS, INC.,

*Appellant*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*.

---

ARISTA NETWORKS, INC.,

*Appellant*,

v.

INTERNATIONAL TRADE COMMISSION,

*Appellee*.

---

On appeal from the United States International Trade Commission
in Investigation No. 337-TA-944.

---

### SECOND CORRECTED NONCONFIDENTIAL BRIEF OF APPELLEE INTERNATIONAL TRADE COMMISSION

DOMINIC L. BIANCHI
General Counsel
Telephone (202) 205-3365

WAYNE W. HERRINGTON
Assistant General Counsel
Telephone (202) 205-3090

AMANDA P. FISHEROW
Attorney for Appellee
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, DC  20436
Telephone (202) 205-2737

Dated:  April 24, 2017

The material redacted from pages 13-15, 20, 23, 25-26, 28, 45-47, 56, and 62-67 of the Commission's nonconfidential brief was designated as confidential business information during the investigation under appeal. *See* 19 U.S.C. § 1337(n).

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF RELATED CASES ........................................................... 1

STATEMENT OF ISSUES .......................................................................... 1

STATEMENT OF THE CASE ..................................................................... 2

I.     Institution of the Investigation ...................................................... 2

II.    The '537 Patent ............................................................................... 3

       A.     Overview of the Technology ................................................ 3

       B.     Overview of the '537 Patent ................................................ 4

III.   The '597 Patent ............................................................................. 10

       A.     Overview of the Technology .............................................. 10

       B.     Overview of the '597 Patent .............................................. 11

IV.    Overview of the Accused Products ............................................. 13

V.     Proceedings Before the Commission .......................................... 16

       A.     The ALJ's Initial Determination ....................................... 16

              1.     The '537 Patent ........................................................ 16

              2.     The '597 Patent ........................................................ 19

              3.     The VLAN Patents ................................................... 21

       B.     The Commission's Final Determination ............................ 21

              1.     The '537 Patent ........................................................ 21

              2.     The '597 Patent ........................................................ 24

              3.     The VLAN Patents ................................................... 27

SUMMARY OF ARGUMENT ................................................................. 27

ARGUMENT ........................................................................................... 29

I.     Standard of Review ...................................................................... 29

# TABLE OF CONTENTS CONT'D

II.   The '537 Patent.................................................................. 30

    A.   The Commission's Construction of "*said router configuration data* managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being *stored in said database*" To Require the Storage of Configuration Data, But Not Commands, Is Correct............... 30

        1.   The Commission's Construction Is Supported by the Language of the Claims .......................................... 31

        2.   The Commission's Construction Is Supported by the Specification ........................................... 34

        3.   The Commission's Construction Is Supported by the Prosecution History.................................... 39

    B.   The ALJ's Findings of Infringement of the '537 Patent Under Arista's Construction, Not Adopted By the Commission, Are Not Reviewable........................................... 43

III.   The Commission Properly Excluded Components Which Arista Intends to Reassemble Into Complete Switches ................................ 44

    A.   The Commission Found that the Switch Components Indirectly Infringe, Mooting Arista's Argument ..................... 46

    B.   The Commission Has Broad Discretion In Fashioning Its Remedies ................................................................. 48

    C.   Arista's Arguments are Inapposite........................................... 52

    D.   Arista Waived Its Argument that the Commission's Orders Cannot Cover Components Not Found to Infringe...... 55

IV.   Arista Improperly Asks this Court to Issue an Advisory Opinion Instructing the Commission on the Application of the Law of Indirect Infringement in Case of any Remand, Where There Has Been No Remand or Remand Determination..................................... 57

    A.   Contributory Infringement ....................................... 57

    B.   Induced Infringement .............................................. 59

V.   The '597 Patent................................................................ 60

# TABLE OF CONTENTS CONT'D

A.   The Standard of Review for Factual Determinations of Noninfringement is Substantial Evidence ................................ 60

B.   The Commission Properly Determined that the Accused Arista Products Do Not Infringe the '597 Patent ..................... 61

CONCLUSION ............................................................................. 67

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen, Inc. v. U.S. Int'l Trade Comm'n*,
902 F.2d 1532 (Fed. Cir. 1990) ............................................................... 53

*In re Amtorg Trading Corp.*,
75 F.2d 826 (C.C.P.A. 1935) .................................................................. 53

*Beloit Corp. v. Valmet Oy*,
742 F.2d 1421 (Fed. Cir. 1984) ......................................................... 43, 59

*Broadcom Corp. v. Int'l Trade Comm'n*,
542 F.3d 894 (Fed. Cir. 2008) ................................................................ 56

*Consol. Edison Co. v. N.L.R.B.*,
305 U.S. 197 (1938).............................................................................. 29

*DSU Med. Corp. v. JMS Co.*,
471 F.3d 1293 (Fed. Cir. 2006) .............................................................. 60

*Fed. Trade Comm'n v. Ruberoid Co.*,
343 U.S. 470 (1952).......................................................................... 29, 50

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) .......................................................... 29, 56

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011).............................................................................. 60

*Goodyear Dental Vulcanite Co. v. Davis*,
102 U.S. 222 (1880).............................................................................. 42

*Hyundai Elecs.Indus. Co., Ltd. v. U.S. Int'l Trade Comm'n*,
899 F.2d 1204 (Fed. Cir. 1990) .............................................................. 50

*Jacob Siegel Co. v. FTC*,
327 U.S. 608 (1946).............................................................................. 50

# TABLE OF AUTHORITIES CONT'D

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................ 58, 59

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ................................................................. 42

*Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)................................................................................ 60

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................. 31

*Spansion, Inc. v. Int'l Trade Comm'n*,
   629 F.3d 1331 (Fed. Cir. 2010) ............................................................. 29

*Storage Tech. Corp. v. Cisco Sys., Inc.*,
   329 F.3d 823 (Fed. Cir. 2003) ............................................................... 31

*Tessera, Inc. v. Int'l Trade Comm'n*,
   646 F.3d 1357 (Fed. Cir. 2011) ............................................................. 61

*Viscofan, S.A. v. U.S. Int'l Trade Comm'n*,
   787 F.2d 544 (Fed. Cir. 1986) ....................................................... *passim*

*Wallace v. Dep't of the Air Force*,
   879 F.2d 829 (Fed. Cir. 1989) ............................................................... 56

## Statutes

5 U.S.C. § 706(2)(E) ..................................................................................... 29

19 U.S.C. § 1337.............................................................................................2

19 U.S.C. § 1337(a) ..................................................................................... 52

19 U.S.C. § 1337(c) ..................................................................................... 29

19 U.S.C. § 1337(d) ............................................................................... 49, 52

19 U.S.C. § 1337(f)........................................................................... 49, 52, 53

35 U.S.C. § 271(b) ................................................................................. 59, 60

# TABLE OF AUTHORITIES CONT'D

35 U.S.C. § 271(c) .................................................................. 57, 58

**Legislative History**

62 Cong. Rec. 5874 (1922) ........................................................ 55

S. Rep. No. 67–595, pt. 1 (1922) ................................................ 55

**Administative Decisions**

*Certain Condensers, Parts Thereof and Products Containing
    Same, Including Air Conditioners for Automobiles*,
    Inv. No. 337-TA-334, USITC Pub. No. 3063,
    1997 WL 817767 (Aug. 1997) ................................................ 51

*Certain Inkjet Ink Supplies and Components Thereof*,
    Inv. No. 337-TA-691, USITC Pub. No. 4290,
    2011 WL 7464367 (Nov. 2011) .............................................. 51

*Certain Sys. for Detecting and Removing Viruses or Worms,
    Components Thereof, and Products Containing the Same*,
    Inv. No. 337-TA-510, USITC Pub. No. 3936,
    2007 WL 4473083 (Aug. 2007) .............................................. 51

*Certain Window Shades and Components Thereof*,
    Inv. No. 337-TA-83, USITC Pub. No. 1152,
    1981 WL 50448 (May 1, 1981) .............................................. 51

**Code of Federal Regulations**

19 C.F.R. § 210.43 ................................................................... 56

**Federal Register Notice**

80 *Fed. Reg.* 4314 (Jan. 27, 2015) ................................................ 2

## STATEMENT OF RELATED CASES

In addition to the related cases identified by Arista Networks, Inc. ("Arista"), and Cisco Systems, Inc. ("Cisco") respectively, in their opening briefs, and Arista's supplemental filing of October 21, 2016, Appellee U.S. International Trade Commission ("the Commission") notes that *Garmin Int'l, Inc. v. Int'l Trade Comm'n,* Federal Circuit Appeal No. 2016-2584, presents an issue similar to this appeal with respect to the Commission's authority to exclude components of infringing devices, where those components are intended for assembly into infringing products. That appeal has been calendared for argument on January 10, 2017.

## STATEMENT OF ISSUES

The Commission submits that the issues on appeal are properly framed as follows:

(1)    Whether the Commission properly construed the term "said router configuration data managed by said database subsystem and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database" recited in claims 1, 10, and 19 of U.S. Patent No. 7,162,537 to require storage of only router configuration data and not commands?

(2)    Whether the Commission acted within its remedial authority in including the components of the infringing assembled switches, intended for reassembly by Arista, in its remedial orders?

(3)    Whether the Court should issue an advisory opinion on how to apply the law of indirect infringement in any remand determination, when no such remand has been ordered or performed?

(4)    Whether the Commission correctly found that the accused products do not infringe U.S. Patent No. 7,340,597?

## STATEMENT OF THE CASE

## I.    INSTITUTION OF THE INVESTIGATION

The Commission instituted this investigation on January 27, 2015, based on a complaint filed by Cisco.  The complaint alleged violations of section 337 of the Tariff Act of 1930 (19 U.S.C. § 1337 or "section 337") based on infringement of certain claims of several U.S. patents, including U.S. Patent Nos. 7,162,537 ("the '537 patent"); 7,340,597 ("the '597 patent"); 6,741,592 ("the '592 patent"); 7,200,145 ("the '145 patent");[1] and 7,290,164 ("the '164 patent").  80 *Fed. Reg.* 4314-15 (Jan. 27, 2015).  The Notice of Institution named Arista as the sole respondent.  *Id.*  The Commission found a violation of section 337 by Arista with respect to the '537, '592, and '145 patents and issued appropriate remedial orders.  Arista appeals the Commission's finding of violation for the '537 patent and Cisco

---

[1] The '592 and '145 patents are collectively referred to as the VLAN patents.

appeals the Commission's finding of no violation for the '597 patent.  The

other asserted patents are not directly at issue in this appeal.

## II.    THE '537 PATENT

### A.    Overview of the Technology

The '537 patent is generally related to a system and method for

managing data in network devices.  Appx903 at Abstract.   The '537 patent

explains that network devices, such as routers and switches, transfer network

messages and packets within a network or between networks.  Appx912 at

1:19-22.  Each router has an operating system that is used to control the

router functions.  *See id.* at 1:37-38.  The '537 patent explains that routers

also use a number of specialized subsystems to perform the functions related

to routing network traffic.  *Id.*

The '537 patent explains that the prior art operates using two different

approaches.  In one approach, the devices rely on different subsystems to

manage the specific functions for which each subsystem is responsible.  *Id*.

The drawbacks of this approach are that each subsystem relies on

information from other subsystems in order to carry out its function (*i.e.*,

there were "multiple dependencies with other client subsystem[s]."").  *Id.* at

1:37-47.  These multiple dependencies hindered device performance, for

example, by making "common transactions cumbersome and unnecessarily complicated." *Id.* at 1:48-67.

In the second approach, a centralized database system is used to manage network device transactions. Appx912 at 2:42-49. The inventor of the '537 patent, Mr. Pradeep Kathail, and others, were awarded U.S. Patent No. 6,704,752 ("the Kathail '752 patent") that covers a centralized database approach. Appx14175-14191. This approach helped to reduce or avoid multiple dependencies among client subsystems. Appx912 at 2:55-57. The Kathail '752 patent discloses that "[t]he centralized database system manages a storage structure . . . contain[ing] configuration data for the router. The centralized database then carries out the configuration change in the appropriate tuple node using the configuration information provided in the configuration command issued by the user." Appx14175 at Abstract. As the '537 patent explains, this second approach also suffers from drawbacks. For example, a centrally managed system is inefficient because it requires one database to perform the transactions continuously on stored data, taxing the central database. Appx912-913 at 2:58-3:12.

**B.     Overview of the '537 Patent**

To address the problems present in the prior art, the '537 patent is directed to a system and method for externally managing router

configuration data using a centralized database that allows the subsystems of the operating system to be modular and independent.  Appx913 at 3:13-16. Thus, the system of the '537 patent maintains modularity by using a centralized database while at the same time reducing some of the computational burden of that centralized database by allowing external subsystems to manage data.  *Id.* at 3:13-38.  The centralized database in the patent is referred to as "sysDB."

In the '537 patent, subsystems can submit a request to sysDB to externally manage certain router configuration data.  Appx914 at 5:18-25. Although prior art systems used a centralized database to store router configuration data (also referred to as configuration information), none allowed the subsystems to manage the data.

The specification teaches storing router configuration data, but not user-supplied commands, in the centralized database.  The title and abstract of the '537 patent both illustrate that the '537 patent is directed to managing router configuration data in conjunction with a centralized database.  The Title recites "Method And System For Externally Managing *Router Configuration Data* In Conjunction With A Centralized Database."[2]

---

[2]  All emphasis in quoted material has been added, unless otherwise noted.

Appx903 at Title.  The Abstract also recites "A method and system for externally managing *router configuration data* in conjunction with a centralized database subsystem in a router device." *Id.* at Abstract.

The specification goes on to repeatedly make clear that router configuration data is in sysDB.  Indeed, the specification explicitly states that user-supplied commands are executed and the router configuration data is stored in the database:

> The config subsystem 28 carries out the operation of receiving configuration commands for a user of the router, ***executing the configuration command*** received from the user and providing configuration information to the user of the router upon request from the user, among other things. As described above, this ***router configuration information is stored*** and managed by the sysDB 26 in the sysDB tree 42.

Appx915 at 8:46-52; *see also* Appx513.  The specification consistently states that sysDB stores router configuration information and data.  Appx913 at 3:64–4:5 ("sysDB . . . *provides a centralized storage and retrieval facility for router configuration information. . . .* The *configuration information stored on the sysDB* may include, for example, Internet Protocol (IP) addresses. . . . user and password data . . . and other router data as known in the art.");   Appx915 at 7:65-8:3 ( "The sysDB tree 42 contains the running *router configuration information* used by the various subsystems to carry out their respective tasks."); Appx913 at 4:13-15 ("By centralizing such

- 6 -

*configuration information* in a sysDB…."); Appx915 at 7:30-35 ("the

configuration information is loaded into the database system."); Appx913 at

4:30-33 ("The sysDB subsystem preferably employs a hierarchical name

space scheme in a tree format (sysDB tree) for data storage and retrieval of

*configuration and other information* for the router." ); Appx913 at 4:44-45

("the sysDB described above employs a tree structure for *data storage* and

retrieval"); Appx914 at 5:41-44 ("*router configuration data* is requested

from the sysDB by requesting subsystems"); Appx914 at 6:60-64

("*configuration information* of the router … is managed by the system

database (sysDB)…"); Appx915 at 7:30-35 ("the *configuration information*

is loaded into the database system…"); Appx916 at 10:12-15 ("When a

request is made to the sysDB 26 for *data* which is externally managed, the

sysDB26 provides the requested *data*…"). Tellingly, however, the

specification does not teach the storage of user commands.

The prosecution history is consistent with the teachings of the

specification.  In the second to last office action response dated September

6, 2005, the applicant added the disputed language "said router configuration

data managed by said database system and derived from configuration

commands supplied by a user and executed by a router configuration

subsystem before being stored in the database"[3]  to asserted independent

claims 1, 10, and 19.  Appx1520-1530.  In that office action response, the

applicant argued that "Ciscon [a reference applied by the Examiner[4]] does

not teach router configuration data as stored in a database" and "router

configuration data as claimed in independent claims 1, 10 and 19 is data that

---

[3] Cisco asserted independent claims 1, 10, and 19 and dependent claims 2, 8-9, 11, and 17-18.  All of the independent claims include this limitation.  Claim 19, as issued, recites:

> 19.  In a router device having a processor and memory, a router operating system executing within said memory comprising:
>
> (a) a database subsystem;
>
> (b) a plurality of client subsystems, each operatively coupled for communication to said database subsystem, one of said client subsystems configured as a managing subsystem to externally manage router data upon issuing a management request to said database subsystem; and
>
> (c) a database operatively coupled to said database subsystem, said database configured to store router configuration data and delegate management of router configuration data to a management subsystem that requests to manage router configuration data, ***said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database***.

Appx920.

[4] U.S. Patent No. 5,634,010.  Appx921-50.

results from a router configuration module executing configuration commands issued by a user.  The configuration module generates configuration data after executing these commands."  Appx1521.  These statements illustrate that the applicant intended to claim the storage of router configuration data but not commands.

After the applicant filed this response, the Examiner again rejected the claims.  *See* Appx1536-1537.  In responding to this rejection, the applicant explicitly explained that (1) there are no commands in Ciscon; and (2) the router configuration data is stored in the database.  The applicant argued that Ciscon does not use configuration commands at all:

> Specifically, Ciscon discloses . . . a flow diagram of the sequence for comparing properties of an object. . . . Applicant submits that structures here are not commands, and can in no way be construed to be equivalent to router configuration commands.

Appx1564-1565.  Then the applicant argued that Ciscon did not disclose execution of user-supplied configuration commands that result in the storage of router configuration data:

> Finally, there is no disclosure, teaching, or suggestion in Ciscon that execution of user-supplied configuration commands ***results in configuration data that is stored in a database***. . . . Directing [the] Examiner's attention to the whole of FIG. 9, there is no indication that the comparison of properties of a data structure results in any configuration data with respect to routers, nor is there any store operation illustrated in Ciscon's

FIG. 9 or described in its accompanying detailed description in columns 18 and 19.

Appx1565-1566.[5]

In allowing the application after this office action response, the Examiner agreed with Cisco's arguments. The Examiner stated "[t]he independent claims recite registering a managing subsystem with a centralized database to externally manage router configuration data derived from configuration commands supplied by a user, which in addition to the rest of the claim limitations are distinguished from the prior art." Appx1593.

## III.    THE '597 PATENT

### A.    Overview of the Technology

The invention of the '597 patent is generally related to communication networks, which allow for access to information and services provided by remote devices. Appx14342 at 1:12-16. One problem with convenient access to remote information and services is that it increases the risk of an attack on the network's security. *Id.* at 1:30-36.

The '597 patent explains that prior attempts to implement a secure, robust, and flexible logging and reporting mechanism to monitor system

---

[5] Cisco's amendment was rejected as noncompliant, Appx1569, but the same remarks were resubmitted. Appx1572-1583; *see also* Arista Br. at 12 n.3.

changes on communications devices as they occurred, typically relied on external network monitors. *Id.* at 2:7-20. However, this structure made the network vulnerable to security threats. For example, an attacker could disable the security device and proceed to attack the communications device. *Id.* at 1:30-38; 2:16-20.

### B. Overview of the '597 Patent

To address the problems in the prior art, the device of the '597 patent includes a "logging module" coupled to a subsystem in the device and uses the hardware and software capabilities of the device to securely log and report configuration changes within the device itself, without the need for external systems. *Id.* at 2:21-38.

The '597 patent describes a communication device that itself contains a logging module that is separate from but coupled to one or more of the operative subsystems of the communication device. The logging module of the device "determines a configuration of the subsystem 115, detects a change in the configuration of the subsystem 115, and indicates that the change has occurred." Appx14344 at 6:7-10. The patent describes the logging module as detecting configuration changes that include software modifications, anomalous conditions, hardware resets, user interaction through the command line interface, and the changes made by the device

itself, such as a device setting its own source IP and MAC address. Appx14342 at 1:30-33; Appx14348 at 14:52-54; Appx14343 at 4:35-38; Appx14346 at 9:18-21; Appx14344 at 5:33-36.  The logging module logs each of these changes to the subsystem, and thereby can provide an indication whenever an attacker attempts to circumvent the security of the subsystem.  Appx14342 at 2:40-42.

Of the asserted claims, claims 1,[6] 39, and 71 are independent and all recite similar limitations directed to detecting a change in configuration of a subsystem and communicating information regarding that change.

---

[6]  Independent claim 1 recites:

> 1.  An apparatus comprising:
>
> a communications device comprising:
>
> a subsystem; and
>
> a logging module, coupled to said subsystem, and configured to detect a change to a configuration of said subsystem of said communications device, and communicate information regarding said change to said configuration of said subsystem of said communications device.

Appx14349.

CONFIDENTIAL BUSINESS
INFORMATION DELETED

## IV.   OVERVIEW OF THE ACCUSED PRODUCTS

The products at issue in this investigation are two types of Arista network switches—fixed switches and modular switches.  Arista's modular switches allow a user to expand the number of ports by adding additional switch hardware.  Appx6090.  In contrast, the Arista fixed switches have a set number of ports for connection and the user cannot expand the switching capacity of the fixed switches.  *Id.*

Arista's switches allow different devices on a network to talk to each other.  The accused switch products each operate Arista's Extensible Operating System ("EOS").   Appx5516; Appx19297; Appx19300-19301.  All of the components of the Arista switches, with the exception of the power cord, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, that allows EOS to ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ the switch and the individual switch components.  Appx528 (citing, *inter alia*, Appx5570-5572); *see also* Appx19277; Appx18746-18747 at 140-144; Appx14358.   The EOS software ▮▮▮▮▮▮▮▮ ▮▮▮▮▮ system operates.  EOS includes many processes, or "agents," that are designed to perform specific tasks.  Appx14170-14171; *see also* Appx5517.  The ▮▮▮▮▮▮▮▮▮ each agent is maintained in and managed by a centralized database called "Sysdb."  *Id.*  The agents interact with each other through Sysdb.  *Id.*

- 13 -

CONFIDENTIAL BUSINESS
INFORMATION DELETED

In order to monitor which agents are running, EOS has a process manager called ProcMgr. Appx6018. ProcMgr is a software process that starts, stops, and restarts the agents. Appx712; Appx6068-6069. ProcMgr, by design, ██████████████████████████████████████ ███████. Appx6070-6071. Nor does ProcMgr ███████████████ ██████████████████████████████. *Id.* In fact, ProcMgr has ██ ███████████████████████████████████ thereto. Appx712; Appx6071. ProcMgr simply starts, stops, and restarts agents ████████████████████████████████████. Appx6068-6070; Appx10258:19-259:8, Appx10263:18-264:5, Appx10293:12-294:2.

One function of ProcMgr ██████████████████████████. Each running agent has ████████████████████████████████ ████████████████. *See, e.g.*, Appx6068-6070; Appx6019. ProcMgr ████████████████████████████████████ ██████. *See, e.g.*, *id.* If ProcMgr █████████████████████████ █████████████████ mechanism (a second function) and ███████████ ██████████████████████████████. Appx10262:24-264:25; Appx6068-6069. Based on these actions, ProcMgr may ████████████████████████, and then it stops and restarts the agent. Appx6071. When ProcMgr starts or restarts an agent, ProcMgr

CONFIDENTIAL BUSINESS
INFORMATION DELETED

██████████████████████. *Id.* Rather, the agent ████████████

████████████████████████████ ProcMgr. *Id.* If a user

changes the configuration of an agent, ProcMgr ██████████████████.

*Id.*

A third operation of ProcMgr (called the ████████ mechanism)

involves ProcMgr █████████████████████████████████

███████████████████████. *See, e.g.*, Appx18999;

Appx6018-6019; *see also* Appx11288:16-1289:21.

As noted above, the accused switches are made up of various

components. The components of the Arista switches, with the exception of

the power cord, ██████████████████████, that allows EOS to

████████████████████ the switch and the individual switch

components. Appx528 (citing, *inter alia*, Appx5570-5572); *see also*

Appx19277; Appx18746-18747 at 140-144. At the time of the filing of the

complaint in this investigation, Arista imported its ████████████████

████████████████████. *See* Appx597. Starting in January 2015,

Arista changed its importation practice ██████████████████████████

██████████████████████████. Appx520;

Appx11160:24-11162:8; Appx19326-19327. After importation, Arista

██████████████████████. *Id.* Arista's witnesses did not

testify as to a business reason for making the change.  *See e.g.*, Appx11162:10-11163:5.  In addition, Arista has imported a small number of switch components.  *See e.g.,* Appx4178; Appx4236; Appx4239; Appx6091-6092; Appx6097-6098; Appx6104; Appx11168:19-21.

## V.    PROCEEDINGS BEFORE THE COMMISSION

### A.    The ALJ's Initial Determination

The ALJ held the evidentiary hearing in September 2015.  On February 2, 2016, the ALJ issued his initial determination ("ID").  The ALJ concluded that Arista infringed the '537, '592, and '145 patents but did not infringe the '597 and '164 patents.  *See* Appx 581.  The ALJ also recommended the entry of a limited exclusion order and a cease and desist order.  Appx12958.

#### 1.    The '537 Patent

In determining that Arista infringed the '537 patent, the ALJ construed various claim terms before determining that Arista infringed the '537 patent.  The claim term at issue on appeal is "*said router configuration data* managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being *stored in said database*."

Before the ALJ, Arista argued that the phrase "commands supplied by a user . . . stored in said database" in this limitation required storing

commands as entered by the user.  Appx667.  The ALJ rejected this construction, finding that the intrinsic record did not support construction of this phrase to include storing the actual commands as entered by the user. *Id.*; Appx657.

The ALJ further found all the elements of the asserted claims were met by the accused switches and more particularly that the "said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database" limitation was met by the accused products both under the construction adopted by him (*i.e.*, Cisco's construction) and the construction advanced by Arista.  *See* Appx664-667, Appx669, Appx673.

The ALJ concluded that the accused products indirectly infringe (*i.e.,* induce infringement and contribute to infringement of) the asserted claims. Appx675-682.  The ALJ found that Arista had the requisite specific intent to encourage infringement.  Appx675-677.  In making the finding that Arista had the intent to indirectly infringe, the ALJ relied on (1) Arista's determination to change its importation practice, (2) Arista's copying of Cisco's technology, and (3) Arista's willful blindness of the underlying direct infringement.  Appx675-678.

The ALJ found that Arista actively induced third parties to infringe the '537 patent "by encouraging, instructing, and enabling third parties to use" the accused products in an infringing manner.  Appx680.  Specifically, Sysdb is necessarily used with every instance of EOS use and includes the infringing functionality.  Appx680-681.  The ALJ concluded that Arista's sales and promotion of its switch hardware also induces infringement of the '537 patent because the hardware is designed to run the EOS software which contains Sysdb.  Appx681.  The ALJ defined switch hardware as "all the individual components, such as a processor, memory, CPU card, chassis, switch card, and fan module."  Appx682.

The ALJ also found that Arista contributes to infringement of the '537 patent.  Appx681-682.  The ALJ explained that the switch hardware is described in the claim limitations of the asserted claims, and is material to the invention.  *Id.*  The ALJ found that the switch hardware is "necessary for independent apparatus claims 10 and 19, and is material with respect to performing each of the steps of the limitations in independent method claim 1."  Appx682.  The ALJ also held that "[t]he switch hardware had no substantial non-infringing uses because it is designed for and used exclusively with EOS, which contains the infringing Sysdb functionality."  *Id.*  As to the components, the ALJ explained that the individual components

are only imported to be incorporated into a finished switch that runs the EOS software that contains the infringing functionality.  *Id.*

### 2.    The '597 Patent

The ALJ construed various terms and determined that Arista did not infringe the '597 patent.  The claim term at issue in this appeal is "configured to detect a change to a configuration of said subsystem of said communications device" of claim 1; "detecting a change in a configuration of a subsystem of a communications device" of claim 39; and "detect a change in a configuration of the subsystem" of claim 71.  The ALJ construed "change [to/in] a configuration" to have its plain and ordinary meaning. Appx705.  The patent describes various changes in configuration, including the logging module detection software modification, anomalous conditions, hardware resets, user interaction through the command line interface, and the changes made by the device (*e.g.*, setting its own source IP and MAC addresses).  Appx705-706.  The ALJ also found that the '597 patent uses the term "state" and "configuration" interchangeably and thereby "configuration" includes the state of the device.  Appx706.

The ALJ concluded that under the plain and ordinary meaning of these claim limitations, the accused products do not infringe the '597 patent. Appx710-715.  The ALJ noted that Cisco's expert testified that three

CONFIDENTIAL BUSINESS
INFORMATION DELETED

mechanisms within ProcMgr satisfy the limitation of detecting a change in a configuration (*i.e.*, (1) ███████████, (2) ProcMgr's ██████████, and (3) ProcMgr's ████████ mechanism).  Appx711.  However, the ALJ found that regardless of the mechanism, ProcMgr ████████████ ████████████████████████████████.  Appx712.  The agents ████████████████████████████████████████ cannot ████████.  *Id.*

　　　　With respect to the ████████████████████, the ALJ found that ProcMgr's ██████████████████████████ ████████████████████████████████ ████████████████.  Appx713

　　　　The ALJ also found that the ████████ mechanism does not detect a change to a subsystem.  Appx713-714.  The ALJ determined that when ProcMgr ██████████████████████████, ProcMgr is ██████████████████████.  Appx714.  Thereby, any ████ that ProcMgr ██████████████ ████████.  *Id.*

### 3.    The VLAN Patents[7]

The ALJ also found that Arista infringed the '592 and '145 patents. Appx765-796.  The ALJ's findings of infringement included findings of direct, induced, and contributory infringement.  Appx793-796.

## B.    The Commission's Final Determination

Cisco and Arista both petitioned for review the ALJ's final ID.  The Commission determined to review the ID in part.  Appx502.

### 1.    The '537 Patent

The Commission found that Arista infringed the '537 patent.  The Commission construed "said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database" to require the storage of router configuration data and not user supplied commands.  Appx513-514.  The Commission found that the focus of the '537 patent is on the storage of configuration data.  The Commission considered the intrinsic record to determine that the claims require the storage of router configuration data, not commands.  Appx512-514.

---

[7] We do not discuss the '164 patent because no findings related to that patent are challenged on appeal.

The Commission found that under this construction, the accused switches indirectly infringed the '537 patent, premised on direct infringement.[8]  Appx515-528.  First, the Commission determined that Arista had the necessary intent to indirectly infringe the '537 patent.  Appx518-Appx524.  The Commission concluded that "Arista's change in importation practices evidences knowledge and intent to infringe under the relevant standards for contributory and induced infringement."  Appx519.

The Commission also found that Arista was willfully blind to infringement of the '537, '592, and '145 patents.  Appx522-524.  The Commission considered Arista's failure to research Cisco's patents even though it had a practice of copying Cisco's technology.  *Id.*

The Commission then discussed the remaining elements of contributory and induced infringement of the asserted patents.  The Commission found that Arista's assembled product, without the infringing software installed,[9] is a material part of the invention.  Appx526-527.

---

[8] "The basis of the Commission's finding of violation for the '537 patent is indirect infringement based on the direct infringement by Arista's fully assembled products (including an operational version of EOS)."  Appx515.  The Commission expressly did not reach whether Arista is liable for directly infringing the asserted claims.

[9] The Commission opinion refers to these products as the Blank Switches.  *See* Appx526.

CONFIDENTIAL BUSINESS
INFORMATION DELETED

Addressing contributory infringement, the Commission also held that it did

not need to reach whether the individual components of the accused products

were material because:

> If Arista attempts to circumvent a Commission remedy by
> importing only the components of the accused products for
> reassembly into complete functional switches, it would still be
> in violation of section 337 because the Commission finds that
> the Blank Switches and the fully assembled completed switches
> indirectly infringe and the accused switch components are
> covered by this finding.

Appx527.

The Commission also found that the accused products induce

infringement of the '537 patent.  Appx527-528.  The Commission held that

Arista's sale and promotion of its products constituted acts of induced

infringement.  Appx528.  The Commission explained that "the switch

hardware is designed to run the EOS software containing Sysdb and is run

each time EOS is booted" and "Arista promotes the use of EOS through

presentations, documents, and manuals."  *Id.*  Switch hardware was defined

by the ALJ as ███████████████ (Appx682), and thus, these findings

███████████████████ accused switches.  *Id.* (citing, *e.g.*, Appx5570-

5572, which is the deposition testimony of Cisco's expert, Dr. Almeroth,

discussing the ███████████████ ).

2.    **The '597 Patent**

The Commission determined to review the ALJ's construction of "a change to a configuration"/"a change in a configuration" and modified the ALJ's construction. Appx536-537. The Commission found that the specification teaches that configuration changes include software modifications, anomalous conditions, hardware resets, user interaction through the command line interface, and changes made by the device itself, such as a device setting its own source IP and MAC address. Appx537. The Commission concluded that the ALJ's statement that "configuration" includes all types of changes to the device was too broad and that "configuration" should be limited to the types of changes described in the '537 patent. The Commission construed the terms "change to a configuration" and "a change in a configuration" to mean "'a change to the state' (*e.g.*, software modifications, anomalous conditions, hardware resets, user interaction through the command line interface, and changes made by the device itself, such as a device setting its own source IP and MAC address)." *Id.*

The Commission found that the accused products do not meet this limitation. Cisco relied on three mechanisms within Arista's ProcMgr to satisfy the limitation of detecting a change in configuration including: (1) the

CONFIDENTIAL BUSINESS
INFORMATION DELETED



████████, (2) ProcMgr's ████████, and (3) ProcMgr's ██

████████ mechanism. *See e.g.,* Appx538 (summarizing the ID's

findings).

The Commission explained that ProcMgr ████████████

████████████████████████████████████████. Appx541.

The Commission found that each agent ████████████████

████████████████████████████████████████████

████████████████████████████████████. *Id.* The

Commission explained that when the ████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████ normally). *Id.* Then,

ProcMgr ████████████████████████████████.

████████ can only determine the last ████████████████

████████████████████████████. *Id.*

The Commission noted that the patent describes the changes to the

configuration as including software modifications, anomalous conditions,

hardware resets, user interaction through the command line interface, and

---

10 ████████████████████

████ Appx10258:19-10259:2; Appx10261:17-23; Appx10279:12-25.

CONFIDENTIAL BUSINESS
INFORMATION DELETED

the changes made by the device itself, such as a device setting its own source

IP and MAC address.  Appx542.   The Commission explained that "an

anomalous condition" is described in the patent as one where there is a

potential compromise of security.  *Id.*  The Commission concluded that

but "

."  *Id.*

Turning to mechanism (3), the ████████ mechanism, the

Commission found that this mechanism does not meet the "configured to

detect a change to a configuration of said subsystem of said communications

device" limitation of claim 1; the "a detecting a change in a configuration of

a subsystem of a communications device" limitation of claim 39; or the

"detect a change in a configuration of the subsystem" limitation of claim 71.

Appx542-543.  The Commission found that  ProcMgr

.  Instead, ProcMgr consults

.  *Id.*  These

files contain information on

.  *Id.*  However, the files

that ProcMgr .  *Id.*  Each agent

(*e.g.,* .  *Id.*



### 3.    The VLAN Patents

Before the Commission, Arista's argument of non-infringement was that the claimed VLANs are abstract and therefore cannot process packets. Appx546-547. The Commission found that VLANs are not conceptual and adopted the ALJ's findings consistent with its opinion. Appx547-552. These findings include induced and contributory infringement for the accused switches, including findings of induced infringement by the components. *Id.*; *see also* Appx793-796.

## SUMMARY OF ARGUMENT

The Commission properly construed the term "*said router configuration data* managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being *stored in said database*" to require the storage of router configuration data only. This construction is supported by the language of the claims, specification, and prosecution history. The claims make clear that it is only router configuration data that is stored, not commands. Similarly, the specification teaches that the router configuration data is derived from user-supplied configuration commands before the router configuration data is stored in the subsystem. Finally, the prosecution

CONFIDENTIAL BUSINESS
INFORMATION DELETED

history, when considered as a whole, is consistent with the specification and claims.

As to the components, the Commission has broad discretion in fashioning its remedies and thus properly excluded components which Arista intends to reassemble into complete switches.  In any event, the Commission found that the switch components indirectly infringe, mooting Arista's argument.  Last, Arista waived any argument the Commission was outside of its statutory authority in including components in its remedial orders.

The Court should reject Arista's request to provide the Commission guidance on applying the law of indirect infringement in the case of a remand.  Arista's requested guidance is unclear and there has been no remand.  Arista thus inappropriately calls on the Court to render an advisory opinion.  In any event, the Commission applied the law correctly.

Last, contrary to Cisco's argument, the Commission correctly found the accused Arista products do not infringe the '597 patent.  The accused products do not detect a change to a configuration.  ProcMgr does ███████ ████████████████ and cannot ██████████████ .  At most, ProcMgr ██████████████████████████████ .  ███████ ██████ is not █████ as detecting a change in a configuration.

# ARGUMENT

## I.    STANDARD OF REVIEW

Rulings of the Commission are reviewed under the standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(E).  19 U.S.C. § 1337(c). The Court reviews the Commission's legal determinations *de novo*.  *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999).  Findings of fact are reviewed for substantial evidence.  *See id.* at 1361-62; *Spansion, Inc. v. Int'l Trade Comm'n*, 629 F.3d 1331, 1343-44 (Fed. Cir. 2010).   "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

This Court has held that the Commission has broad discretion to fashion its remedies.  *Viscofan, S.A. v. U.S. Int'l Trade Comm'n*, 787 F.2d 544, 548 (Fed. Cir. 1986).  Therefore, judicial review on the issue of remedy "necessarily is limited."  *Id.*  So long as the Commission's remedy bears a reasonable relation to the harm identified in the investigation, the remedy will be sustained.  *See Fed. Trade Comm'n v. Ruberoid Co.*, 343 U.S. 470, 473 (1952).

## II.    THE '537 PATENT

Before the ALJ and the Commission, Arista advanced several non-infringement arguments with respect to the '537 patent.  However, Arista has narrowed its argument on appeal to the construction of one claim limitation.  Arista does not challenge the Commission's findings of infringement under the Commission's construction.

### A.    The Commission's Construction of "*said router configuration data* managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being *stored in said database*" To Require the Storage of Configuration Data, But Not Commands, Is Correct

Claims 1, 10, and 19 recite "*said router configuration data* managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being *stored in said database*."  Appx919-920 at 15:33-36, 16:59-63, 18:36-39.

The Commission found that this limitation requires only the storing of configuration data in a database and does not require the storage of commands, while Arista argues that the claimed phrase "before being stored in said database" in that limitation requires that user-supplied commands are also stored.  Arista Br. at 26; Appx512-514.  As explained below, the Commission's determination is correct in light of the claims, specification, and prosecution history.

Claim construction "begin[s] with and remain[s] centered on the language of the claims themselves." *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 830 (Fed. Cir. 2003). The claim language is read in the context of the entire patent, including the specification. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (*en banc*). The court may rely heavily on the specification when construing claims, but should avoid reading limitations from the specification into the claims. *Id.* at 1317, 1323. In addition, the prosecution history can also inform the decision maker how the inventor understood the invention and whether the inventor narrowed the claim scope during prosecution. *Id.* at 1317.

### 1.   The Commission's Construction Is Supported by the Language of the Claims

The parties agree that analysis of a particular claim limitation begins with the words of the claim as one of ordinary skill in the art would understand them. *See* Arista Br. at 24; Cisco Br. at 35. When one considers the language of the claims, instead of Arista's approach of a single phrase taken out of context, the conclusion must be that the Commission's construction is correct.

The disputed claim limitation, "*said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before*

being *stored in said database*" is focused on defining the "router configuration data."  The limitation requires that the "router configuration data" be "derived from configuration commands" which are "supplied by the user" and "executed by a router configuration subsystem."  While Arista argues that grammar requires that the phrase "before being stored in said database" be construed as referring to "configuration commands," the proper reading of this limitation, when considered in the context of the claims, is that "before being stored in said database" refers only to "router configuration data."  *See* Arista Br. at 26-29.   Any ambiguity is clarified when this phrase is considered in context of the other claim limitations and claims.

Independent claim 19 is informative on this point regarding what is being stored in the database.  Claim 19 recites, *inter alia*:

> (c) a database operatively coupled to said database subsystem, **said database configured to store router configuration data** and delegate management of router configuration data to a management subsystem that requests to manage router configuration data, ***said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database***.

Appx920 at 18:31-39.  The language of claim 19, one of the asserted independent claims, clearly requires that the database store router configuration data when it recites "said database configured to store said

router configuration data." There is no requirement that the database be configured to store commands. These commands, when executed, generate the router configuration data but are not themselves router configuration data. The phrase "before being stored in said database" thus refers to the "router configuration data." Arista's argument that grammar dictates that "before being stored in said database" requires that the "commands supplied by a user" be stored in the database is thus inconsistent with the phrase "said database configured to store router configuration data." The mere fact that the drafter of the claim did not use commas does not mean the user-supplied commands must be stored. Such a reading of the claim limitation is in direct conflict with other portions of the claims.

Arista also argues that the Commission's construction is not correct because the "router configuration data managed by said database" phrase in the first portion of the disputed claim limitation would be redundant if the Commission's construction of "before being stored in said database" refers to the "router configuration data" because both phrases would be directed to storing router configuration data. Arista Br. at 28. However, the first phrase, "said router configuration data managed by said database system" is directed to the management of the router configuration data. The phrase "derived from configuration commands supplied by a user and executed by a

router configuration subsystem before being stored in said database" is directed to the timing of the storage (*i.e.*, after the user-supplied commands are executed to create the configuration data) and derivation of the router configuration data. Therefore, these two phrases are not redundant, as Arista asserts.

In addition, dependent claims 2 and 11 also support the Commission's construction. While independent claims 1 and 10 do not explicitly recite that the database is configured to store configuration data like claim 19, claims 2 and 11, which depend from claims 1 and 10, respectively, provide additional guidance. Claims 2 and 11 recite "maintaining router configuration data using a tree structure having a plurality of tuples by said database system." Appx919 at 15:41-43; Appx920 at 17:1-3. By only referring to the maintenance of router configuration data, this means that only data (not user-supplied commands), was stored.

## 2.    The Commission's Construction Is Supported by the Specification

The specification as a whole, including the claims, background, brief description of the invention, detailed description, and even the title and abstract of the '537 patent, support the Commission's construction. Arista advances a construction that is not supported by the specification. Instead of establishing that the specification supports its construction, Arista argues

- 34 -

that nothing in the specification teaches that configuration commands are not also stored. *See e.g.,* Arista Br. at 31-32.

The specification supports the Commission's construction. The specification describes the "config subsystem" as receiving user-entered commands and executing those to create the router configuration information. *See e.g.,* Appx915 at 8:46-52. This router configuration information (also referred to as configuration data) is stored in sysDB. *Id.*

This focus on router configuration data begins as early as the title and abstract, which both illustrate that the '537 patent is directed to managing router configuration data in conjunction with a centralized database. The Title recites "Method And System For Externally Managing *Router Configuration Data* In Conjunction With A Centralized Database." Appx903. Similarly, the Abstract also recites "A method and system for externally managing *router configuration data* in conjunction with a centralized database subsystem in a router device." *Id.*

The specification emphasizes the storage of configuration data but does not discuss the storage of user-supplied commands. Indeed, the specification explicitly states that commands are executed and the resulting router configuration data is stored in the database:

> The config subsystem 28 carries out the operation of receiving configuration commands for a user of the router, ***executing the***

> **configuration command** received from the user and providing
> configuration information to the user of the router upon request
> from the user, among other things. As described above, this
> **router configuration information is stored** and managed by the
> sysDB 26 in the sysDB tree 42.

Appx915 at 8:46-52; *see also* Appx513.  This passage tellingly explains that

the user supplied commands are executed and the resulting router

configuration data is stored in the database, thereby distinguishing between

configuration commands and router configuration data.  There is no

discussion of storing user-supplied commands.

In addition, there are numerous examples in the specification that

focus on the storage of configuration data.   For example, the specification

states "sysDB . . . provides a centralized storage and retrieval facility for

router configuration information. . . . The configuration information stored

on the sysDB."  Appx913 at 3:64–4:5; *see also* Appx915 at 7:65-8:3.  The

specification also states:

- "By centralizing such *configuration information* in a
  sysDB…."  Appx913 at 4:13-15.

- "[T]he configuration information is loaded into the
  database system."  Appx915 at 7:30-35.

- "The sysDB subsystem preferably employs a hierarchical
  name space scheme in a tree format (sysDB tree) for data
  storage and retrieval of *configuration and other
  information* for the router." Appx913 at 4:30-33.

- "[T]he sysDB described above employs a tree structure

for *data storage* and retrieval." Appx913 at 4:44-45.

- "[R]*outer configuration data* is requested from the sysDB by requesting subsystems." Appx914 at 5:41-44.

- "[C]onfiguration information of the router … is managed by the system database (sysDB)." Appx914 at 6:60-64.

- "[T]he configuration information is loaded into the database system…" Appx915 at 7:29-34

- "When a request is made to the sysDB 26 for *data* which is externally managed, the sysDB26 provides the requested *data*." Appx916 at 10:11-15.

If the disputed claim limitation were intended to cover the storage of commands, the specification would discuss the storage of commands. It does not.

Arista relies on various statements in the Background of the Invention, including applications incorporated by reference (*e.g.*, the '752 Kathail patent), and the brief description of the invention to assert that the '537 patent discloses storing of user supplied commands. There is no such disclosure. Instead, the statements in the specification discuss sysDB receiving and processing commands, but make no mention of storing user-supplied commands. Arista Br. at 29-30 (citing Appx902-920 at 2:51-53,

1:29-30).[11]  Rather, these statements refer to the communication of

commands to sysDB.  Similarly, Arista turns to the teachings incorporated

by reference in the background (*e.g.*, the Kathail '752 patent).  Arista Br. at

30-31.  The passage Arista relies on in the Kathail '752 patent also discusses

receiving configuration commands but does not discuss storage of those

commands.

Arista also relies on a passage in the Brief Description of the

Invention, Appx913 at 4:11-13, that states "[t]he present invention employs

a centralized sysDB which handles storage and retrieval tasks normally

assigned to various subsystems."  *Id.*  Again, this passage does not discuss

the storage of commands.  Arista relies on expert testimony to argue this

statement encompasses commands.  However, Cisco's expert testified that

there is nothing in the specification that discusses the storage of commands.

Appx10168-10170.

Finally, Arista is wrong when it states that the specification's

statement that "[t]he present invention is a method and system for managing

data externally in conjunction with a centralized information provider or

database system," supports its position.  Arista Br. at 30-31 (citing Appx913

---

[11] Dr. Almeroth, Cisco's expert, testified that there is nothing in the
specification that discusses the storage of commands.  Appx10168-10170.

at 3:42-44). Instead, this statement reinforces that the focus of the invention is on router configuration data, not commands. Indeed, Arista's expert conceded this. Appx11028:25-11029:6.

### 3. The Commission's Construction Is Supported by the Prosecution History

As Arista notes, the prosecution of the '537 patent was lengthy. However, Arista's claim construction argument is primarily premised on a few snippets of the prosecution history. Arista Br. at 32-36. When the prosecution history as a whole is considered, along with the specification and claims, the conclusion must be that the intrinsic record supports the Commission's construction.

In the second to last office action response, dated September 6, 2005, the applicant added the disputed language "said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in the database," to independent claims 1, 10, and 19. Appx1520-1530. In that office action response, the applicant argued that "Ciscon [a reference relied on by the Examiner] does not teach router configuration data as stored in a database" and "router configuration data as claimed in independent claims 1, 10 and 19 is data that results from a router configuration module executing configuration commands issued by a user.

The configuration module generates configuration data after executing these commands." Appx1521.  There is no reference to storage of commands. These statements directly support the construction the Commission adopted and are in direct conflict with Arista's contention that the database stores user-supplied commands.

After the applicant filed this response, the Examiner again rejected the claims. *See* Appx1536-1537.  In responding to this rejection, the applicant stated "Ciscon fails to disclose . . . executing configuration commands before storing them in a database."   Appx 1564.  However, Arista's selective reading of this statement out of context with the remainder of the prosecution history is not consistent with the office action response and the prosecution history as a whole.  Here, the applicant was not intending to distinguish Ciscon on the basis of commands being stored in the database. The remainder of the applicant's response illustrates this point because the applicant argued that (1) there are no commands in Ciscon; and (2) the router configuration data is stored in the database.  These arguments reinforce that it is the router configuration data that is stored.

Specifically, in that same response, the applicant argued that Ciscon does not use configuration commands at all:

> Specifically, Ciscon discloses . . . a flow diagram of the
> sequence for comparing properties of an object. . . . ***Applicant***

> **submits that structures here are not commands, and can in no way be construed to be equivalent to router configuration commands.**

Appx1564-1565.  The applicant distinguished Ciscon based on the absence

of commands, not their storage.  *Id.*  Then the applicant argued that Ciscon

did not disclose execution of user-supplied configuration commands that

result in the storage of router configuration data:

> **Finally, there is no disclosure, teaching, or suggestion in Ciscon that execution of user-supplied configuration commands results in configuration data that is stored in a database.**  As the present invention performs this claim limitation to manage router configuration data in conjunction with a centralized database, the novelty here is that this claim limitation provides a way to incorporate a database into managing user-supplied configuration commands, not properties of data structures, to more effectively configure routers deployed in a network.  Directing [the] Examiner's attention to the whole of FIG. 9, **there is no indication that the comparison of properties of a data structure results in any configuration data with respect to routers, nor is there any store operation illustrated in Ciscon's FIG. 9 or described in its accompanying detailed description in columns 18 and 19**.

Appx1565-1566.  These statements, in the same office action response,

cannot be reconciled with Arista's heavy reliance on the statement "Ciscon

fails to disclose . . . executing configuration commands before storing them

in a database."  In addition, Arista's reliance on the statement "the *novelty*

*here* is that *this claim limitation* provides a way to *incorporate a database*

*into managing user-supplied configuration commands*, not properties of data

structures, to more effectively configure routers deployed in a network" is misplaced. Arista Br. at 33. This statement distinguishes Ciscon based on the use of a database to manage the configuration data resulting from configuration commands not storing user-supplied commands.

Arista also contends that it was necessary for the applicant to argue that the claims require storing commands in order to overcome the office action rejection. Arista Br. at 32-34. However, when the examiner issued his Notice of Allowance, he relied only on configuration data and not storage of commands:

> The independent claims recite registering a managing subsystem with a centralized database to externally manage router configuration data derived from configuration commands supplied by a user, which in addition to the rest of the claim limitations, are distinguished from the prior art.

Appx1593. Accordingly, the prosecution history supports the Commission's construction and is consistent with the repeated disclosures in the specification that confirm that only router configuration data is stored. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 980 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) (quoting *Goodyear Dental Vulcanite Co. v. Davis,* 102 U.S. 222, 227 (1880)).

## B. The ALJ's Findings of Infringement of the '537 Patent Under Arista's Construction, Not Adopted By the Commission, Are Not Reviewable

As Arista itself acknowledges, the ALJ's determination, not adopted by the Commission, that the accused products infringe the '537 patent even under Arista's own construction (which would require storage of commands) is not reviewable by this Court. Arista Br. at 39. Despite this acknowledgment, Arista spends several pages arguing that it does not infringe under its proposed construction. *Id.* at 39-43. The Commission expressly took no position regarding whether or not the accused products infringe under Arista's construction (Appx518) and this Court has said that it does not sit to review what the Commission has not decided. *See Beloit Corp. v. Valmet Oy,* 742 F.2d 1421, 1423 (Fed. Cir. 1984) ("this court does not sit to review what the Commission has not decided. Nor will it review determinations of presiding officers on which the Commission has not elected to provide the court with its views."). If the Court determines to adopt Arista's construction of the disputed limitation, the investigation should be remanded to the Commission for a determination on the issue of infringement.

**III.  THE COMMISSION PROPERLY EXCLUDED COMPONENTS WHICH ARISTA INTENDS TO REASSEMBLE INTO COMPLETE SWITCHES**

Arista argues, for the first time on appeal, that the Commission's remedial orders exceed the scope of the Commission's authority when they include "components thereof" without a finding that the components themselves induce or contribute to infringement.[12]  *See* Arista Br. at 45. Specifically, Arista takes issue with a statement in the Commission's opinion made in connection with its discussion of contributory infringement. After finding that Arista's Blank Switches were material and contributorily infringed, the Commission stated:

> Although Arista argues that each of the imported components must also be material to the invention, the Commission need not reach this issue.  If Arista attempts to circumvent a Commission remedy by importing only the components of the accused products for reassembly into complete functional switches, it would still be in violation of section 337 because the Commission finds that the Blank Switches and the fully

---

[12] The Commission's limited exclusion order prohibits the importation of "certain network devices, related software and components thereof that infringe one or more claims" of the '537, '592, and '145 patents.  Appx568. Similarly, the Commission's cease and desist order prevents Arista from "importing**,** selling, marketing, advertising, distributing, transferring (except for exportation), soliciting United States agents or distributors, and aiding or abetting other entities in the importation, sale for importation, sale after importation, transfer (except for exportation), or distribution of certain network devices, related software and components thereof" that infringe one or more of the claims of  the '537, '592, and '145 patents.  Appx572.

CONFIDENTIAL BUSINESS
INFORMATION DELETED

assembled complete switches indirectly infringe and the
accused switch components are covered by this finding.

Appx527.  Thus, if Arista imports components of the accused switches with

the intent of reassembling them into complete (infringing) switches, those

components will be treated in the same way as completed switches, avoiding

circumvention of the Commission's remedial orders.  Arista's actions

illustrate that it intends to circumvent the Commission's orders.

At the time of the filing of the complaint in this investigation, Arista

imported its ███████████████████████████████████.  *See*

Appx597.  Starting in January 2015, Arista changed its importation practice

████████████████████████████████████████████████████

██████.  Appx520; Appx11160:24-11162:8; Appx19326-19327.  After

importation, Arista ████████████████████████.  *Id.*  The

switches are then sold to customers.  Arista's witnesses did not testify as to a

business reason for making the change.  *See e.g.*, Appx11162:10-11163:5.

During the investigation, Arista also imported a few of ████████████

███████████████.

As discussed *infra,* Arista's position is contrary to the decisions of this

Court and the Supreme Court which confirm that the Commission has broad

discretion in fashioning its remedial orders consistent with the purpose and

language of the statute.  In accordance with that discretion, the Commission

CONFIDENTIAL BUSINESS
INFORMATION DELETED

has a long standing practice of including components in its remedial orders

to avoid circumvention of those orders.  Further, even if it were necessary to

find that the components were infringing, Arista ignores the Commission's

findings that the components of its accused switch products indirectly

infringe (via inducement) all three patents included in its remedial orders.

### A.    The Commission Found that the Switch Components Indirectly Infringe, Mooting Arista's Argument

The Arista switch components at issue include, for example:

processors, memory, CPU card, chassis, switch card, and fan modules.

Despite Arista's contention, the Commission's remedial orders cover

components found to indirectly infringe.  Most of the components that Arista

████ include ████ that allows ████████████████

████████████████.  Appx528 (citing, *inter alia,*

Appx5570-5572); Appx685.  The Commission found that the Arista switch

components indirectly infringed the '537, '592, and '145 patents.  Appx551-

552; Appx545; Appx528; Appx507; Appx681.  Arista does not challenge

the Commission's findings for the '592 and '145 patents, where the

Commission explicitly found that the components induce infringement.

Appx551-552; Appx545.  Therefore, for this reason alone, Arista's argument

must fail.

CONFIDENTIAL BUSINESS
INFORMATION DELETED

As to the '537 patent, Arista's arguments must also fail.  Arista's

argument that the Commission's orders cover products not found to infringe

appears to be based on the Commission's findings on contributory

infringement.[13]  *See e.g.*, Arista Br. at 45 (citing Appx527, Appx568,

Appx573).

While it is true that the Commission did not make a finding that the

components contributorily infringed the '537 patent, Arista overlooks that

the Commission found that Arista induced infringement of the '537 patent.

Appx527-528, Appx519-524.  This finding included the switch components.

*Id.* (citing, *e.g.*, Appx5570-5572, which is the deposition testimony of Dr.

Almeroth discussing the ███████████████ ).  The Commission's

opinion adopted the ID's findings consistent with the opinion, Appx507,

including the ID's findings on inducement.  The Commission's opinion

refers to "switch hardware" in summarizing the ALJ's ID and in its own

subsequent analysis.  Appx527-528.  The ALJ expressly defined "switch

---

[13] As noted above, the Commission found that, with respect to contributory
infringement, that the "Blank Switches and the fully assembled complete
switches indirectly infringe and the accused switch components are covered
by this finding."  Appx527.  The Commission explained that "[i]f Arista
attempts to circumvent a Commission remedy by importing only the
components of the accused products for reassembly into complete functional
switches, it would still be in violation of section 337."  *Id.*

hardware" to include "all the individual components, such as a processor, memory, CPU card, chassis, switch card, and fan module." Appx682. The ID specifically discussed Arista's sales and promotion of switch hardware induces infringement because the switch hardware is designed to run EOS software, which contains Sysdb (the infringing functionality). Appx680-681; Appx528. Arista does not appeal the Commission's findings of induced infringement set forth in the Commission's opinion and related findings of the ALJ, including findings related to the switch hardware and the intent findings necessary to support a finding of induced infringement. *See* Appx528, Appx519-524.

Thus, even if it were necessary that there be a finding of infringement as to components, the Commission made such findings, mooting Arista's arguments. As discussed below, however, there was no need to make such findings since the Commission has discretion to include components in its remedial orders to avoid circumvention of those orders.

## B. The Commission Has Broad Discretion In Fashioning Its Remedies

Even if the Commission's remedial orders covered components for which a finding of indirect infringement was not made, the Commission has broad discretion in fashioning its remedial orders. *Viscofan,* 787 F.2d at 548. As noted above, Arista's argument with respect to "components

thereof" specifically refers to the Commission's contributory infringement findings for the '537 patent. Arista Br. at 45 (only citing the Commission opinion at Appx527). Here, the Commission described the circumstances it sought to cover—preventing circumvention of its remedial orders through the reassembly of imported components into completed switches. Specifically, the Commission stated:

> If Arista attempts to circumvent a Commission remedy by importing only the components of the accused products for reassembly into complete functional switches, it would still be in violation of section 337 because the Commission finds that the Blank Switches and the fully assembled completed switches indirectly infringe and the accused switch components are covered by this finding.

Appx527.

The Commission has broad authority to fashion effective remedies and to ensure that those remedies are not circumvented. In *Viscofan,* 787 F.2d at 548, this Court addressing the remedy provisions in 19 U.S.C. § 1337(d) and 19 U.S.C. § 1337(f)(1) stated:

> Section 337 requires the Commission, upon determining a violation of the section, either to "direct that the articles concerned, imported by any person violating the provision of this section, be excluded from entry into the United States" (subsection (d)) or to direct any person violating the section "to cease and desist from engaging in the unfair methods or acts involved, unless after considering the effect of such order upon the public health and welfare, competitive conditions in the United States economy, the production of like or directly competitive articles in the United States, and United States

consumers, it finds that such order should not be issued."
(Subsection (f)(1)).

Under this provision the Commission has broad discretion in
selecting the form, scope and extent of the remedy, and judicial
review of its choice of remedy necessarily is limited.

The Court further indicated that the Supreme Court's discussion of the

Federal Trade Commission's wide discretion in fashioning a remedy is

"equally applicable to" the Commission. *Id.* at 548 (quoting *Jacob Siegel*

*Co. v. FTC,* 327 U.S. 608, 611-613 (1946)); *see also Hyundai Elecs.Indus.*

*Co., Ltd. v. U.S. Int'l Trade Comm'n,* 899 F.2d 1204, 1208-09 (Fed. Cir.

1990).

Addressing the contours of the Federal Trade Commission's remedial

authority, the Supreme Court has indicated that such authority should be

construed broadly so the agency can craft an effective remedy. *Ruberoid*

343 at 470. That authority therefore is "not limited to prohibiting the illegal

practice in the precise form in which it is found to have existed in the past.

If the Commission is to attain the objectives Congress envisioned, it cannot

be required to confine its road block to the narrow lane the transgressor has

traveled; it must be allowed effectively to close all roads to the prohibited

goal, so that its order may not be by-passed with impunity." *Id.* That is

exactly what the Commission did here. The Commission sought to prevent

Arista from importing components for the purpose of reassembly into the infringing article.  Appx527.

Consistent with its discretion, the Commission has a longstanding practice of including components in its remedies.  *See*, *e.g.*, *Certain Window Shades and Components Thereof*, Inv. No. 337-TA-83, USITC Pub. No. 1152, 1981 WL 50448, at *2 (May 1, 1981); *Certain Condensers, Parts Thereof and Products Containing Same, Including Air Conditioners for Automobiles*, Inv. No. 337-TA-334 (Remand), USITC Pub. No. 3063, 1997 WL 817767, at *18 (Aug. 1997)  ("We also find it reasonable to include a provision covering condenser parts, since the evidence suggests that infringing condensers can be assembled in the United States from imported parts.");  *Certain Inkjet Ink Supplies and Components Thereof*, Inv. No. 337-TA-691, USITC Pub. No. 4290, 2011 WL 7464367, at *3 (Nov. 2011); *Certain Sys. for Detecting and Removing Viruses or Worms, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-510, USITC Pub. No. 3936, 2007 WL 4473083, at *9 (Aug. 2007).   Arista's argument that the Commission must independently find that imported components, intended for reassembly, also infringe to be excluded from entry is thus contrary to the decisions of this Court, the Supreme Court, and Commission precedent.

This Court should therefore deny Arista's request to be given the ability to circumvent the remedial orders here. Indeed, a decision otherwise would have very substantial negative repercussions. If Arista is able to circumvent the Commission's remedial orders, other infringers will also seek to do so, making those remedial orders ineffective.

## C.    Arista's Arguments are Inapposite

Arista argues that the Commission can only reach switch components if those components have been found to be infringing, relying on statutory language "articles that infringe" in 19 U.S.C. § 1337(a)(1), language that is used to define what constitutes a violation of section 337. Arista has missed the point. Arista's arguments fail to address the Commission's broad discretion in formulating its remedial orders and Arista fails to argue, much less show, that the Commission abused that discretion in this case. The Commission found that Arista's assembled switches indirectly infringed and thus, that there has been a violation of 19 U.S.C. § 1337(a)(1). Arista does not deny that indirectly infringing articles may be excluded from entry. The question is whether Arista is entitled to import those same articles in pieces and then reassemble those pieces into completed articles for sale to customers. The question is one of remedy, and as discussed above, this Court, addressing the remedy provision of 19 U.S.C. § 1337(d) and 19

U.S.C. § 1337(f)(1), has long held that the Commission has broad discretion in selecting the form, scope, and extent of the remedy, decisions which reflect decisions of the Supreme Court concerning the Federal Trade Commission.  Thus, like the Federal Trade Commission, the Commission is "not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past."  The Commission has authority over sales for importation, importations, and sales after importation.  It is neither unusual nor unreasonable for the Commission to fashion a remedy against infringing articles when the infringing articles are reassembled from imported components and then sold as completed products to customers.  Allowing infringers to import components, and then reassemble those components into complete infringing products, would invite circumvention of the Commission's orders.  *Id.*  This is clearly not what Congress intended.

Arista argues, relying on *Amtorg* and *Amgen*, that the Commission cannot circumvent any limits on the scope of patent law and cannot "extend" the Commission's authority to "articles that it has not found to infringe."  Arista Br. at 48-50 (citing *In re Amtorg Trading Corp.*, 75 F.2d 826, 829 (C.C.P.A. 1935); *Amgen, Inc. v. U.S. Int'l Trade Comm'n,* 902 F.2d 1532 (Fed. Cir. 1990)).  As discussed above, Arista's argument begs the question.  Neither of these cases relate to the Commission's remedial authority.

Neither of these cases limits the Commission's remedies so that those remedies cannot cover components of infringing articles intended for reassembly after importation unless the Commission expressly finds the components of the infringing articles are also infringing, directly or indirectly.   Indeed, as discussed above, the law is just the opposite, *i.e.,* the Commission has broad authority in fashioning its remedies and that authority includes exclusion of components to prevent circumvention of the Commission's remedial orders and to provide meaningful relief.  Further, in this case, the Commission did find the components to be infringing.

Arista further argues that the Commission's interpretation of section 337 extends it beyond its purpose of adjudicating trade disputes to instead adjudicating "domestic patent disputes," because the imported articles "have not been found to infringe."  Arista Br. at 50-53.  Again, Arista's argument begs the question as it ignores controlling case law that gives the Commission broad remedial powers.  *Viscofan*, 787 F.2d at 548.  These powers include preventing circumvention of its orders by excluding imported components intended for reassembly into infringing articles. Arista's argument also ignores the Commission's finding that Arista induced and contributed to infringement in the importation of articles.  *See, e.g.,* Appx518-528.  Specifically, Arista ignores the Commission's findings that

Arista's assembled switches indirectly infringed and that the imported components induced infringement.

Arista argues that the legislative history supports its position.  If anything, the legislative history supports a broad reading of the statute.  *See, e.g.,* S.Rep. No. 67–595, pt. 1, at 3 (1922) (referring to section 337's predecessor, section 316 of the Tariff Act of 1922) ("[t]he provision relating to unfair methods of competition in the importation of goods is broad enough to prevent every type and form of unfair practice and is, therefore, a more adequate protection to American industry than any antidumping statute the country has ever had."); *see also* 62 Cong. Rec. 5874, 5879 (1922). Arista's contrary view of the legislative history would strip the Commission of its broad discretion in fashioning its remedy to avoid circumvention and provide meaningful relief.  The Commission's remedial orders should stand.

### D.    Arista Waived Its Argument that the Commission's Orders Cannot Cover Components Not Found to Infringe

Arista's argument that the Commission's remedial orders cannot cover "components" that have never been found to infringe the asserted patent is made for the first time in this appeal.  *See* Arista Br. at 43-53. While Arista generally argued that the components must be found to be infringing, none of Arista's foregoing arguments were presented to the Commission.  Thus, Arista waived these arguments by failing to present

CONFIDENTIAL BUSINESS
INFORMATION DELETED

them to the Commission and the ALJ.  19 C.F.R. § 210.43(b)(2); *Broadcom Corp. v. Int'l Trade Comm'n,* 542 F.3d 894, 901 (Fed. Cir. 2008); *Finnigan*, 180 F.3d at 1363.  Further, before the Commission, Arista only included a single sentence that the Commission's remedy should be narrowly tailored. Appx13466.  This single sentence is insufficient to preserve Arista's arguments for appeal.  *Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989).

As discussed above, the Commission has consistently included components in its remedial orders for decades.  *See supra* §III.B.  Based on the Commission's previous practice and its broad remedial authority, Arista should have known the Commission's remedy could include components as a way to prevent circumvention of a Commission order, without expressly finding that the components directly or indirectly infringe.  This is especially so since Arista contemplated the ███████████████████ and had ███████████.  Indeed, the draft orders provided by Cisco and the Commission investigative attorney expressly included components.  Though aware of these orders and provided with an opportunity to respond to them, Arista did not challenge the "components thereof" language in the draft remedial orders before the Commission.

**IV.  ARISTA IMPROPERLY ASKS THIS COURT TO ISSUE AN ADVISORY OPINION INSTRUCTING THE COMMISSION ON THE APPLICATION OF THE LAW OF INDIRECT INFRINGEMENT IN CASE OF ANY REMAND, WHERE THERE HAS BEEN NO REMAND OR REMAND DETERMINATION**

Arista's last argument is premised on a remand for a redetermination of infringement.  As part of any remand order, Arista asks this Court to instruct the Commission on certain aspects of the law of indirect infringement, aspects Arista argues the Commission misapplied.  This is obviously a request to render an advisory opinion, which this Court should reject.  The arguments Arista makes now may be submitted to the Commission if the Court orders a remand (unless previously waived) and may then be reviewed in the context of any remand determination.  Nevertheless, the Commission comments on Arista's arguments as follows.

**A.  Contributory Infringement**

35 U.S.C. § 271(c) requires that the component be "a material part of the invention," "to be especially made or especially adapted for use in an infringement" of the patent, and "not a staple article or commodity of commerce suitable for substantial noninfringing use."  Arista challenges the Commission's findings regarding the "material part of the invention."  Specifically, Arista attacks the Commission's finding:

> The Commission finds that the Blank Switches are a material part of the invention. The Blank Switches, which are made of various components such as a processor, memory, CPU card, chassis, switch card, and fan modules are required for independent claims 10 and 19. Specifically, independent apparatus claims 10 and 19 call for "a plurality of router subsystems" and "a router device having a processor and memory" and could not be infringed without the underlying hardware that executes Sysdb. In addition, the Blank Switches are a material part of asserted independent method claim 1. Claim 1, requires both hardware, including "a plurality of router subsystems" and "a router device having a processor and memory," and software to, *inter alia*, request and access "router data."

Appx526-527; Arista Br. at 54-58. However, Arista appears to limit its argument to the switch components for which the Commission expressly made no findings of contributory infringement. In arguing that the Commission improperly applied the law, Arista asserts that the component must be "part of the inventive contribution" in order for it to be material. Arista Br. at 56. In arguing such an application, Arista does not cite any case law to support its contention, and 35 U.S.C. §271(c) does not use this language. Instead, Arista relies on testimony before a House subcommittee, but concedes that this testimony does not support the proposition that to be material a component must itself be novel or inventive. Indeed, this Court has affirmed findings that a component is material under § 271(c) without any finding that the component itself is novel. *E.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320-21 (Fed. Cir. 2009) (finding component

material with no novelty analysis).  Nor does Arista provide any explanation as to how the language it relies on would be applied.

As noted above, the Commission expressly did not address the issue of materiality of the switch components.  It is not appropriate for Arista to ask this Court to provide guidance on an issue that does not go directly to the violation of section 337 Arista is appealing, but instead could only be an issue if a remand is necessary.  As this Court has stated, "this [C]ourt does not sit to review what the Commission has not decided." *Beloit,* 742 F.2d at 1423.

## B.    Induced Infringement

Arista argues that inducement under 35 U.S.C. § 271(b) can only be found when the imported component is directly connected to the infringing functionality, *i.e.,* it must "actually, and actively, induce infringement." Arista Br. 58-61.  Again, Arista provides no guidance for the application of its argued-for principle.  Further, Arista's concerns do not arise from its appeal of the Commission's determination as to the '537 patent.  Rather, Arista asserts that the Commission did not connect the "components" of the accused products to the "private virtual LAN inventions recited in the claims" of the '592 and '145 patents.  Arista Br. at 59.  Neither of these

patents is the subject of Arista's appeal. In any event, the connection is clear.

Under 35 U.S.C. § 271(b), a finding of induced infringement is supported for "[w]hoever actively induces infringement of a patent." Here, that is Arista. *See Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 935 (2005); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66, 768-771 (2011); *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* in relevant part); Appx551-552. Arista had knowledge of the patents, and intent to induce infringement. Appx518-524; Appx551-552. The law does not require more.

## V.    THE '597 PATENT

### A.    The Standard of Review for Factual Determinations of Noninfringement is Substantial Evidence

Cisco challenges the Commission's findings of non-infringement for the '597 patent. Cisco Br. at 73-77. That finding was based on the construction of "a change to a configuration" and "a change in configuration" to mean "'a change to the state' (*e.g.*, software modifications, anomalous conditions, hardware resets, user interaction through the command line interface, and changes made by the device itself, such as a device setting its own source IP and MAC address)." Appx537. Cisco is not challenging the Commission's construction, only the application thereof.

Cisco Br. at 73.  Cisco attempts to rework the Commission's findings into a

claim construction argument—which it is not.  It is a factual question and

the Commission's determination is supported by substantial evidence.  *See*

*e.g., Tessera, Inc. v. Int'l Trade Comm'n*, 646 F.3d 1357, 1364 (Fed. Cir.

2011).

> ### B.    The Commission Properly Determined that the Accused Arista Products Do Not Infringe the '597 Patent

Cisco argues that the Commission's determination should be reversed

because the Commission's explicit findings support a determination of

infringement.  Cisco is wrong—substantial evidence supports the

Commission's determination.

Cisco asserts independent claims 1, 39 and 71.[14]  Each of these

independent claims recites a limitation regarding the detection of a

configuration change.  Specifically, apparatus claim 1 recites "a logging

module, coupled to said subsystem, and configured to detect a change to a

configuration of said subsystem of said communications device";  the

method of claim 39 recites "detecting a change in a configuration of a

subsystem of a communications device wherein a logging module is coupled

to said subsystem and said detecting is performed at the logging module";

---

[14] Cisco also asserts dependent claims 14, 15, 29, 63, 64, 72, and 73.

CONFIDENTIAL BUSINESS
INFORMATION DELETED

and the communications device of claim 71 is configured to cause the

processor to "detect a change in a configuration of the subsystem."

Appx14349 at 16:48-50; Appx14351 at 19:22-25; Appx14352 at 21:29.

Focusing on these claim limitations, they require that the accused

products *detect* a change in the configuration of the subsystem to be

infringing.  Cisco's argument boils down to whether █████████████████

███████████████████████████████████████████████ is

█████████████ detecting a change to a configuration—it is not.

Moreover, regardless of whether the alleged detection occurs ████████

████████ as Cisco asserts, ProcMgr, the accused logging module, never

detects a change to a configuration.

In order to "detect" a change, ProcMgr must identify or ascertain a

configuration change—this is the plain meaning of "detecting."  ████████ is

not ████████ detecting.  When ProcMgr ████████████ as the

Commission found, it does not detect a change ██████████████████

████████████████████.  Appx6070-6071.  This is not the same as

detection.  *See* Appx13143 n.3 (Arista presenting a hypothetical illustrating

the difference between ████████ and ████████).

ProcMgr is a software process that starts, stops, and restarts agents.

Appx6068.  ProcMgr, by design, ██████████████████████████████████

CONFIDENTIAL BUSINESS
INFORMATION DELETED

███████████████████████. Appx6070-6071; *see also* Appx6018. Nor

does ProcMgr communicate ████████████████████████████

████████████. Appx6070. In fact, ProcMgr ███████████████████

██████████████████████████ thereto. Appx713; Appx6071. ProcMgr

simply starts, stops, and restarts agents ████████████████████████

████████████████████████████████████████████.

Appx6068-6070; Appx10258:19-10259:8.

Cisco relies on three mechanisms within ProcMgr to satisfy the

limitation of detecting a change in configuration in the asserted claims

including: (1) the ████████, (2) ProcMgr's ███████, and (3)

ProcMgr's ███████████ mechanism. None of these methods results in

ProcMgr detecting a configuration change of an agent.

Each agent in the accused products has █████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████. Appx713; Appx6068-6069; Appx19305 ("████████████

████████████████████████████████████████████████████████."").

ProcMgr checks the ██████████████████████████████████████

████████████. However, in █████████████████, ProcMgr does not

detect a change in configuration. Instead, ProcMgr █████████████████

CONFIDENTIAL BUSINESS
INFORMATION DELETED

█████████████████████████████████████████████████

████████████████████. *See e.g.*, Appx6070-6071.  Even though a

██████████████████████████████████████.  *See, e.g.,*

Appx6068-6069; Appx14376; Appx19305 ("█████████████████

█████████████████████████████.").  ProcMgr does

not and cannot █████████████████████.  Appx712;

Appx6070-6071.  Further, "██████████████████████████

██████████████████."  Appx14376.  After ProcMgr determines that

██████████████████████████.  Appx713.

When ProcMgr examines the ████████████ (*i.e.*, the ██████████

███████) to determine ████████████████████████

███████████████████████.  This is not the

detection of a change in the configuration of an agent.  Appx713;

Appx6068-6071; *see also* Appx10262-10265.  The agents' configurations

█████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████.  Appx6070-6071 ("███████████

████████████████████.");  Appx10264:2-5 ("████████████████

[*sic*] █████████████████████████████████████.").

CONFIDENTIAL BUSINESS
INFORMATION DELETED

The ████████████████████████ a change to a configuration.
Appx541-542.

Cisco tries to piece together various statements in the ALJ's ID to
allege that the Commission's findings are inconsistent with the
Commission's conclusion and in doing so seeks to broaden the
Commission's claim construction.  *See* Cisco Br. at 76 (citing ID at
Appx713).  Cisco asserts that the actions it relies on are detections, when in
fact they are not.  After discussing ProcMgr's operation and the changes to
the configuration described in the patent, the Commission concluded
"████████████████████████████" not detecting
whether or not the agent is functioning.  In addition, even ██████████
██████████ (*e.g.,* ████████████████████████), as
the ALJ found, does not mean that ProcMgr detects changes in
configuration.  ProcMgr ████████████████████████████████
████████████████████████████████████████████
██████—it does not detect ████████████.  Appx6068-6071; Appx14376;
Appx19305.  Indeed, it may ████ that there ████████████████████
████████████████.  *Id.*  This determination by ProcMgr is not a
detection of a configuration change.

CONFIDENTIAL BUSINESS
INFORMATION DELETED

Cisco also relies on an Arista white paper to assert that ProcMgr

██████████████████████████████. *See* Cisco Br. at 74-75

(quoting and reproducing Appx14172). As discussed above, this is not the

detection of a configuration change required by the claims. Substantial

evidence supports the Commission's determination. ProcMgr's checking ██

█████████████ to determine ████████████████████████████

does not constitute detecting whether the subsystem's configuration has

changed as claimed in the '597 patent. Appx6068-6071; Appx11285-11286.

Instead, it constitutes ProcMgr█████████████████, *i.e.*, ████████████

█████████████. *Id.*

Finally, the Commission's finding that the ████████████ mechanism

does not detect a change in configuration is supported by substantial

evidence. Cisco relies on a quote from a document discussing ProcMgr's

████████████████████████████████████████████████████████.

Cisco Br. at 74 (citing Appx14379, Appx10281:2-7, Appx10348:12-

10349:22). However, the cited document discusses ProcMgr ████████

████████████████ (*i.e.,* ████████████████████████████

████████████████████), as the ALJ and Commission found. Appx713-

714; Appx542-543; Appx507. This is expressly what the ALJ and the

CONFIDENTIAL BUSINESS
INFORMATION DELETED

Commission found and the cited document does not contradict this finding.

For example, the Commission stated:



> ProcMgr also ███████████████████████████████████
> █████████████████████████. *See, e.g.*, CX-
> 001C at Q/A 125, 143. These files contain information on ████████
> ██████████████████████. RX-3909C at Q/A 245; CX-1C
> at Q/A 128; *see also* Tr. at 1283-84; RX-3912C at Q/A 43. The
> files stored ███████████████████████████
> ████████████████ as Cisco contends.  Cisco Pet. at 19.
> ████████████████████
> ████████ Tr. at 1283-84.

Appx542.  Similarly, the ALJ found:



> Indeed, the evidence demonstrates that the ████████████
> ██████. RX-3912C (Duda RWS) at Q/A 43, Q/A 50;
> Hollingsworth Tr. 1272.  Moreover, Cisco's expert Dr. Wicker
> testified that the files in the ████████████
> ███████. *See* CX-000lC (Wicker
> WS) at Q/A 125, Q/A 143-44.

Appx714.  The document Cisco relies on does not contradict these findings.

Even if it did, substantial evidence supports the Commission's

determination.

## CONCLUSION

For the reasons set forth above, the Court should affirm the

Commission's final determination.

Respectfully submitted,

/s/ Amanda P. Fisherow
DOMINIC L. BIANCHI
   General Counsel
WAYNE W. HERRINGTON
   Assistant General Counsel
AMANDA P. FISHEROW
   Attorney Advisor
Office of the General Counsel
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, DC  20436
tel. (202) 205-2737
fax (202) 205-3111
amanda.fisherow@usitc.gov

Date:  April 24, 2017

# CERTIFICATE OF SERVICE

I, Amanda P. Fisherow, hereby certify on this 24th day of April 2017

that I am electronically filing the attached **SECOND CORRECTED**

**NONCONFIDENTIAL BRIEF OF APPELLEE INTERNATIONAL**

**TRADE COMMISSION** using the Court's CM/ECF system, which will

send notification to the following:

**On behalf of ARISTA NETWORKS, INC.:**
Michael J. McKeon, Esq.
**FISH & RICHARDSON, PC**
1425 K Street, NW, 11th Floor
Washington, DC 20005
mckeon@fr.com

**On behalf of CISCO SYSTEMS, INC.:**
John C. O'Quinn, Esq.
**KIRKLAND & ELLIS LLP**
655 15th Street, NW
Washington, DC 20005
john.oquinn@kirkland.com

/s/ Amanda P. Fisherow
Amanda P. Fisherow
Attorney for Appellee
U.S. International Trade Commission
500 E Street, SW, Suite 707
Washington, DC  20436
tel. (202) 708-2301
fax (202) 205-2737
amanda.fisherow@usitc.gov

## CERTIFICATE OF COMPLIANCE
## PURSUANT TO FED. R. APP. P. 32(a)(7)(C)

Pursuant to Fed. R. App. P. 32(a)(7)(B), I hereby certify that the

attached brief contains 13,694 words, according to the word-count function

of the word-processing system used to prepare the brief (Microsoft Word

2010).


/s/ Amanda P. Fisherow
Amanda P. Fisherow


Dated:  April 24, 2017

**CERTIFICATE OF COMPLIANCE REGARDING BRIEFS
CONTAINING MATERIAL SUBJECT TO A PROTECTIVE ORDER**

This brief does not comply with the word count limitations set forth in Fed. Cir. R. 27(m).  The Commission previously filed a corrected brief on January 9, 2017 with an accompanying motion requesting permission to exceed the word count limitations set forth in Fed. Cir. R. 27(m).  That motion was granted on January 31, 2017.  The corrections made in this brief are only to reduce the number of redactions previously accepted by the Court.


/s/ Amanda P. Fisherow
Amanda P. Fisherow


Dated:  April 24, 2017