NON-CONFIDENTIAL

Nos. 16-2539, 16-2563

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

CISCO SYSTEMS, INC.

Appellant,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARISTA NETWORKS, INC.

Appellant,

v.

INTERNATIONAL TRADE COMMISSION,

Appellee.

Appeal from the United States International Trade Commission,
Investigation No. 337-TA-944

## APPELLANT ARISTA NETWORKS INC.'S
## CORRECTED RESPONSE AND REPLY BRIEF

Ruffin B. Cordell
Michael J. McKeon
Lauren A. Degnan
Linhong Zhang
FISH & RICHARDSON P.C.
The McPherson Building
901 15th Street, 7th Floor
Washington, D.C. 20005
degnan@fr.com

Brian P. Boyd
FISH & RICHARDSON P.C.
1180 Peachtree Street, 21st Floor
Atlanta, GA 30309

*Counsel for Appellant Arista Networks, Inc.*

NON-CONFIDENTIAL

## CERTIFICATE OF INTEREST

Counsel for the Appellant Arista Networks, Inc. certifies the following:

1.      The full name of every party or amicus represented by me is:  Arista Networks, Inc.

2.      The name of the real party in interest:  Arista Networks, Inc.

3.      Parent corporations and any publicly held companies that own 10% or more of the stock of the party are:  None.

4.      The names of all law firms and the partners and associates that appeared for the party in the lower tribunal or are expected to appear for the party in this court and who are not already listed on the docket for the current case are:

**Fish & Richardson P.C.**: Frank J. Albert; Michael J. Ballanco*; Juanita R. Brooks; Robert P. Courtney; John A. Dragseth; Christopher W. Dryer; Thomas F. Fusco; Alexksandr Gelberg; Daniel R. Gopenko; David J. Goren; Kevin E. Greene*; David J. Healey; Leeron G. Kalay; Steven A. Katz; Andrew R. Kopsidas; Zachary Loney; Ralph A. Phillips; Elizabeth G.H. Ranks; Jennifer M. Rea*; Thomas H. Reger II; W. Karl Renner; Adam R. Shartzer; Christopher Smith*; Seth M. Sproul; Richard A. Sterba; Kevin Su; Michael C. Tyler; Ronald Vogel; Markus Weyde; Linhong Zhang
*no longer with the Firm

**Keker & Van Nest LLP**:  Brian Ferrall; Michael Kwun; Elizabeth K. McCloskey; David J. Silbert; Robert A. Van Nest

**Latham & Watkins LLP**: Matthew Aichele; Dale Chang; Michael A. David; Adam M. Greenfield; Julie M. Holloway; Jeffrey G. Homrig; Harsha Kurpad; Brian W. Lewis; Alex Manlap Li; Douglas E. Lumish; Nathanial J. McPherson; Ethan Park; Bert C. Reiser; Brett Sanford; Amy L. Thomas; Thomas W. Yeh; Patricia Young; Shuai Yuan

**Mayer Brown LLP**: Warren Payne; Howard W. Waltzman

**NON-CONFIDENTIAL**

**Tensegrity Law Group, LLP:** Paul T. Ehrlich; Robert L. Gerrity; William P. Nelson; Matthew D. Powers; Stefani C. Smith; Jonathan G. Tamimi

Date:  April 26, 2017          /s/ Lauren A. Degnan
                              Lauren A. Degnan

NON-CONFIDENTIAL

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................ i

TABLE OF CONTENTS.................................................................... iii

TABLE OF AUTHORITIES ..............................................................v

STATEMENT OF RELATED CASES ................................................ ix

INTRODUCTION ...............................................................................1

REPLY TO THE COMMISSION'S AND CISCO'S RESPONSE .......................7

I.   The Infringement Finding for the '537 Patent Should Be Vacated.................7

   A.   This Court Should Reverse the Commission's Construction of the "Storing Commands" Limitation .........................................................7

      1.   Cisco Wrongly Frames the Dispute as Whether the Claims Require Storing Either Router Configuration Data or Commands Supplied by a User....................................................7

      2.   Arista's Application of Standard Grammar Rules Remains Unchallenged .........................................................................10

      3.   Cisco Overlooks the Patent's Disclosure Regarding Sending Commands Supplied by the User to the Database for Storage.16

      4.   Cisco Selectively Reads the Prosecution History, Ignoring the Key Aspects that Show Cisco Amended the Claims To Require Storing User-Supplied Commands ...........................................20

   B.   The Commission's Infringement Finding Should Be Vacated..........26

II.   The Remedial Orders Exceed the Commission's Authority ........................26

   A.   Arista Did Not Waive the Argument that the Commission's Orders Cannot Cover Imported Articles That Do Not Infringe.....................26

   B.   The Commission Did Not Find that the "Components" Infringe .......29

   C.   The Commission's Discretion To Fashion Remedies Does Not Permit It To Exceed the Statute ..................................................................34

      1.   The Overly Broad Orders Improperly Prevent Legitimate Commerce .............................................................................35

      2.   The Commission's Discretion To Fashion an Appropriate Remedy Cannot Expand Its Statutory Authority .....................37

      3.   The Commission's Longstanding Error Cannot Be an End-Run Around Its Statutory Authority ...............................................40

**NON-CONFIDENTIAL**

     D.      This Court Should Provide Guidance on the Standards for Indirect Infringement for Application on Remand ...........................................41

RESPONSE TO CISCO'S CROSS-APPEAL........................................................45

COUNTERSTATEMENT OF THE ISSUES..........................................................45

COUNTERSTATEMENT OF THE CASE AND FACTS ....................................46

    I.   The '597 Patent.........................................................................................46

    II.  The Accused Technology—ProcMgr.......................................................46

SUMMARY OF THE ARGUMENT ....................................................................48

ARGUMENT ........................................................................................................49

    I.   Substantial Evidence Supports the Commission's Finding of No Infringement of the '597 Patent.......................................................49

         A.      The Standard of Review Is Substantial Evidence ................................49

         B.      The Noninfringement Finding Finds Ample Record Support ............50

         C.      The Components Do Not Infringe the '597 Patent ............................52

    II.  The Commission Erred by Not Reaching the Issue of Invalidity under 35 U.S.C § 101 based on the Doctrine of Assignor Estoppel ...........................54

         A.      The '597 Patent Cannot Survive Section 101 Review.......................54

         B.      Assignor Estoppel Should Not Have Proscribed Patent-Eligibility Review ....................................................................................................56

CONCLUSION .....................................................................................................60

<u>MATERIAL OMITTED FROM NON-CONFIDENTIAL BRIEF</u>

THE MATERIAL OMITTED FROM THE NON-CONFIDENTIAL BRIEF IS INFORMATION DESIGNATED CONFIDENTIAL BUSINESS INFORMATION UNDER THE ITC PROTECTIVE ORDER (PAGES 47-48, 50-52), RELATING TO ARISTA'S INTERNAL PRACTICES AND THE TECHNICAL DESIGN, OPERATION, AND MANUFACTURING OF ITS PRODUCTS.

NON-CONFIDENTIAL

## TABLE OF AUTHORITIES

**Cases**                                                      **Page(s)**

*Action on Smoking & Health v. C.A.B.*,
713 F.2d 795 (D.C. Cir. 1983) ........................................................... 33

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
134 S. Ct. 2347 (2014) ..................................................... 5, 54, 56, 59

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. Nov. 29, 2016) .......................................... 55

*Arris Group, Inc. v. British Telecomms., PLC*,
639 F.3d 1368 (Fed. Cir. 2011) .................................................. 42, 43

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008) ...................................................... 13

*Bilski v. Kappos*,
561 U.S. 593 (2010) ................................................................. 57, 59

*Board of Regents of Univ. of Tex. Sys., v. BENQ Am. Corp.*,
533 F.3d 1362 (Fed. Cir. 2008) ...................................................... 20

*Camelot Terrace, Inc. v. NLRB*,
824 F.3d 1085 (D.C. Cir. 2016) ...................................................... 29

*Chef Am., Inc. v. Lamb–Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004) ...................................................... 19

*Cisco Sys., Inc. v. Arista Networks, Inc.*,
Case No. 5:14-cv-05344-BLF(NC), ECF Doc. No. 749 ...................... 6

*In re Comiskey*,
554 F.3d 967 (Fed. Cir. 2009) ........................................................ 57

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
776 F.3d 1343 (Fed. Cir. 2014) ...................................................... 55

*Crystal Semiconductor Corp. v. TriTech Microelecs., Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ...................................................... 14

*Diamond Sci. Co. v. Ambico, Inc.*,
848 F.2d 1220 (Fed. Cir. 1988) ........................................................58

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
672 F.3d 1270 (Fed. Cir. 2012) ........................................................13

*Eaton Corp. v. United States*,
395 F. Supp. 2d 1314 (Ct. Int'l Trade 2005) ...............................35, 40

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
839 F.3d 1089 (Fed. Cir. 2016) ........................................................55

*Federal Trade Commission v. Ruberoid Co.*,
343 U.S. 470 (1952).........................................................................38

*Fenner Investments, Ltd. v. Cellco P'ship*,
778 F.3d 1320 (Fed. Cir. 2015) ....................................................3, 25

*Finisar Corp. v. DirecTV Group, Inc.*,
523 F.3d 1323 (Fed. Cir. 2008) ........................................................11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
131 S. Ct. 2060 (2011).....................................................................44

*In re Hyatt*,
708 F.2d 712 (Fed. Cir. 1983) ..........................................................10

*Hyundai Electronics Industries Co., Ltd. v. International Trade Commission*,
F.2d 1204, 1209 (Fed. Cir. 1990) .....................................................38

*Indacon, Inc. v. Facebook, Inc.*,
824 F.3d 1352 (Fed. Cir. 2016) ........................................................20

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016) ........................................................56

*Internet Patents Corp. v. Active Network, Inc.*,
790 F.3d 1343 (Fed. Cir. 2015) ........................................................57

*Kyocera Wireless Corp. v. International Trade Commission*,
545 F.3d 1340 (Fed. Cir. 2008) ...........................................4, 37, 40, 41

**NON-CONFIDENTIAL**

*Lear, Inc. v. Adkins,*
   395 U.S. 653 (1969)..................................................................59

*Lucent Techs., Inc. v. Gateway, Inc.,*
   580 F. 3d 1301 (Fed. Cir. 2009) ...........................................42

*In re Magnum Oil Tools Int'l, Ltd.,*
   829 F.3d 1364 (Fed. Cir. 2016) .............................................29

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
   132 S. Ct. 1289 (2012)............................................................59

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
   463 U.S. 29 (1983)..................................................................33

*In re Nuvasive, Inc.,*
   No. 2015-1670, 2016 WL 7118526 (Fed. Cir. Dec. 7, 2016) ...........33

*In re Papst Licensing Digital Camera Patent Litig.,*
   778 F.3d 1255 (Fed. Cir. 2015) .............................................20

*Phillips v. Shinseki,*
   581 F.3d 1358 (Fed. Cir. 2009) .............................................41

*Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.,*
   517 F.3d 1364 (Fed. Cir. 2008) .............................................41

*Salazar v. Procter & Gamble Co.,*
   414 F.3d 1342 (Fed. Cir. 2005) .............................................26

*Scott Paper Co. v. Marcalus Mfg. Co.,*
   326 U.S. 249 (1945)..........................................................57, 58

*Secs. & Exch. Comm'n v. Chenery Corp.,*
   318 U.S. 80 (1943)..................................................................32

*Shire Dev., LLC v. Watson Pharms., Inc.,*
   787 F.3d 1359 (Fed. Cir. 2015) .............................................20

*Springs Window Fashions LP v. Novo Indus., L.P.,*
   323 F.3d 989 (Fed. Cir. 2003) ...............................................25

## NON-CONFIDENTIAL

*Suprema, Inc. v. International Trade Commission*,
  796 F.3d 1338 (Fed. Cir. 2015) (en banc) ........................................................38

*Tessera, Inc. v. Int'l Trade Comm'n*,
  646 F.3d 1357 (Fed. Cir. 2011) ..........................................................49

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ...........................................................55

*Univ. of W. Va. Bd. of Trustees v. VanVoorhies*,
  278 F.3d 1288 (Fed. Cir. 2002) .........................................................57

*In re Varma*,
  816 F.3d 1352 (Fed. Cir. 2016) .........................................................41

*Viscofan, S.A. v. International Trade Commission*,
  787 F.2d 544 (Fed. Cir. 1986) ......................................................39, 40

**Statutes**

19 U.S.C. § 1337(a)(1)(A) ..................................................................39

19 U.S.C. § 1337(a)(1)(B) ..................................................................39

19 U.S.C. § 1337(c) ............................................................................29

29 U.S.C. § 160(e) .............................................................................29

35 U.S.C. § 101 .........................................................................*passim*

35 U.S.C. § 271(c) ......................................................................30, 42

Administrative Procedure Act.............................................................33

**Other Authorities**

19 CFR § 210.47 ................................................................................29

NON-CONFIDENTIAL

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel states:

(a) No other appeal in or from the same civil action or proceeding in the lower court or body was previously before this or any other appellate court;

(b) On December 19, 2014, Cisco Systems, Inc. ("Cisco") filed two complaints requesting that the U.S. International Trade Commission commence investigations against Arista under Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337. The Commission instituted Investigation Nos. 337-TA-944 and -945 based on these complaints. The Commission's determination in the -944 Investigation is at issue in this appeal. The target date for completion of the -945 Investigation is March 7, 2017—with the Administrative Law Judge scheduled to issue an Initial Determination by November 7, 2016. The -944 and -945 Investigations involve different and unrelated patents, but the same accused products. In addition, a patent infringement action Cisco filed against Arista is pending and styled *Cisco Systems, Inc. v. Arista Networks, Inc*., Case No. 5:14-cv-05343 (N.D. Cal. filed Dec. 5, 2014). The N.D. Cal. action involves the same patents as this appeal, and other patents asserted across the two Commission investigations. The N.D. Cal. action is stayed completion of the Commission investigations and any appeals, pursuant to 28 U.S.C § 1659(a).

**NON-CONFIDENTIAL**

(c)  On September 28, 2016, the ITC instituted an enforcement proceeding involving U.S. Patent No. 7,162,537, at issue in Arista's appeal, No. 16-2563, designated Investigation No. 337-TA-944 (Enforcement Proceeding).

(d) The Patent Trial and Appeal Board has instituted six *inter partes* review ("IPR") proceedings involving patents involved in the two ITC investigations: (1) IPR2015-00975 involving U.S. Patent No. 8,051,211; (2) IPR2015-00978 involving U.S. Patent No. 7,340,597; (3) IPR2016-00303 involving U.S. Patent No. 6,377,577; (4) IPR2016-00306 involving U.S. Patent No. 7,023,853; (5) IPR2016-00308 involving U.S. Patent No. 7,162,537; and (6) IPR2016-00309 involving U.S. Patent No. 7,224,668.

(e)  The Final Written Decision in IPR2015-00978 involving the '597 patent, at issue in Cisco's appeal, No. 16-2539, issued on September 28, 2016.  Arista filed a notice of appeal of this Final Written Decision on October 11, 2016.  This appeal was docketed in the U.S. Court of Appeals for the Federal Circuit as *Arista Networks, Inc. v. Cisco Systems, Inc.*, Appeal No. 17-1046, on October 14, 2016. Cisco's "protective" cross-appeal was docketed as Appeal No. 17-1281, on November 29, 2016.  On December 20, 2016, Appeal No. 17-1046 was dismissed without prejudice, and on December 22, 2016, Appeal No. 17-1281 was dismissed without prejudice.

**NON-CONFIDENTIAL**

(f)  The Final Written Decision in IPR2016-00308 involving the '537 patent, at issue in Arista's appeal, No. 16-2563, is due by June 11, 2017.

(g)  The Final Written Decision in IPR2015-00975 involving the '211 patent issued on October 5, 2016.  Arista filed a notice of appeal of this Final Written Decision on December 5, 2016.  This appeal was docketed in the U.S. Court of Appeals for the Federal Circuit as *Arista Networks, Inc. v. Cisco Systems, Inc.*, Appeal No. 17-1313, on December 6, 2016.  Cisco's cross-appeal was docketed as Appeal No. 17-1380, on December 20, 2016.

(h)  The remaining IPRs are pending and Final Written Decisions are due by June 2017.

**NON-CONFIDENTIAL**

# INTRODUCTION

Arista has challenged on appeal two fundamental legal errors—first, the Commission's construction of a '537 claim limitation in a way that is contrary to the intrinsic evidence and second, its issuance of remedial orders to cover articles (*i.e.*, the "Components") for which the Commission deliberately made no infringement findings, an action wholly divorced from its statutory authority. Cisco, in contrast, attacks the Commission's thorough factual findings of noninfringement of the '597 patent, while conspicuously omitting reference to the applicable "substantial evidence" standard of review.  As discussed below, Cisco cannot defend the Commission's decision with respect to the '537 patent and also cannot meet the high burden to reverse the Commission's factual findings of noninfringement of the '597 patent.

**'537 Patent Claim Construction**:  Because the claim language and the prosecution history compel Arista's construction, Cisco and the Commission[1] set up a strawman.  No one disputes that the claim requires storing router configuration data in a centralized database.  Yet Cisco erroneously asserts that Arista's construction precludes coverage of storing router configuration data in the centralized database so, the argument goes, Arista's construction must be wrong.

---

[1] The Commission's arguments mostly mirror Cisco's.  For brevity, where there is overlap, Appellant will address the Commission's arguments as Cisco's.

**NON-CONFIDENTIAL**

The dispute, however, is not whether the claim requires storing ***router configuration data*** (it certainly does), but has always been whether a specific portion of limitations 1a, 10a, and 19c requires storing ***commands supplied by a user***.  Therefore, Cisco's discussion of how the patent discloses storing router configuration data in the centralized database is irrelevant.  It does disclose that.  But the patent also teaches that configuration commands are sent to the centralized database.  Tellingly, Cisco has never offered an explanation for why the '537 patent sends configuration commands to the centralized database, if not for storage.

Cisco also fails to take into account the import of the prosecution and, importantly, the progression of arguments that ultimately led the examiner to allow the claims.  Over the course of ***ten*** office action responses in over ***six*** years, Cisco made multiple arguments in support of patentability, but did not succeed until it amended the claims and argued that the centralized database stores not only router configuration data, but also configuration commands supplied by a user.  *See* Appx1564 ("Ciscon fails to disclose teach or otherwise suggest executing configuration commands before storing them in a database.").  In asserting that the argument about storing router configuration data was the one that actually secured allowance, in addition to being contrary to the Patent Office record, Cisco runs afoul of this Court's teaching that "the interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher

2

whether the examiner relied on them, or how much weight they were given." *Fenner Investments, Ltd. v. Cellco P'ship*, 778 F.3d 1320, 1325 (Fed. Cir. 2015). Those statements were made, they were clear, and the public is entitled to rely on them. Cisco's litigation-inspired revision of the prosecution record must be rejected.

**Exclusion of Components Not Found To Infringe**: Cisco half-heartedly asserts that Arista somehow waived its argument that the Commission must find the Components infringe to subject them to its remedial orders. That is, of course, nonsense. Arista consistently sought a ruling from the Commission that the Components do not infringe the '537 patent and expressly stated that "no exclusion order or cease and desist order should apply to Arista components and subassemblies because they do not infringe." *See, e.g.*, Appx11897; Appx12735. The Commission has erroneously sidestepped this threshold issue by declining to address Arista's specific arguments on noninfringement and instead relying on supposed authority to exclude the Components, whether or not they infringe, to prevent presumed "circumvention" of its orders. *See* Appx527.

Given these statements, Cisco and the Commission attempt to create an infringement finding in the Commission Opinion where there is none. The Commission wrongly claims its holding that "Arista's sale and promotion of its accused products, including the Blank Switches, constitute acts of induced

infringement," Appx528, was really a finding that Arista's importation of the Components infringes, when the Commission Opinion defines and uses "accused products" for the '537 patent to mean fully-assembled switches, not Components. Appx512. These arguments are mere *post hoc* rationalizations for its failure to make the requisite findings.

On the merits, Cisco's main arguments mirror those this Court rejected in *Kyocera Wireless Corp. v. International Trade Commission*, 545 F.3d 1340 (Fed. Cir. 2008)—that the Commission has broad discretion to fashion remedies, that its chosen remedy is necessary to provide effective relief, and that its longstanding practice of issuing similar orders should be given deference. Cisco and the Commission raise alarms about supposed circumvention, but no amount of hand-waving over circumvention can bootstrap the Commission's authority to issue remedies where none otherwise exists in the statute. Arista squarely put into issue during the proceedings whether the Components infringed the asserted claims—the absence of a ruling on the matter provides no basis to exclude such components, which, until such a determination, must be presumed to be commerce entitled to entry into the United States.

Contrary to the Commission's assertion, furthermore, the remedial orders are not so narrowly-tailored as to prevent importation of only components used for "reassembly"—i.e., assembling an entire switch abroad, taking it a part, importing

all of its pieces into the U.S., and then putting it back together.  On its face, the LEO barred Arista from importing even one noninfringing component that is used in a domestically-manufactured switch.  The Commission simply does not have authority to regulate the importation of noninfringing components that are to be used in connection with subsequent U.S. manufacturing operations.

**'597 Patent Noninfringement**:  Cisco's challenge here is that the Commission erred in finding that Arista network switches do not detect "a change to a configuration of said subsystem," under the Commission's construction, which is not appealed.  The Commission's correct finding that ProcMgr cannot detect such a change has ample evidentiary support.

**Alternative Ground To Sustain the '597 Decision:**  An alternative ground exists for affirming the Commission's finding of no violation:  the '597 patent is directed to unpatentable subject matter.  Here, the asserted claims recite nothing more than (1) detecting a change in configuration, and (2) communicating information regarding the change, and they cannot withstand scrutiny under *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), and its progeny. However, the Commission held that assignor estoppel applies to challenges under 35 U.S.C. § 101, and thus did not examine patent eligibility.  This holding was legal error because this Court has never applied the doctrine of assignor estoppel to patentable subject matter challenges, nor should it.

**NON-CONFIDENTIAL**

\* \* \*

A final introductory word is warranted to respond to where Cisco starts. Cisco boasts of the Commission Opinion's discussion of "copying," apparently hoping this Court will bend based on Commission statements irrelevant to this appeal. Although Arista vigorously disagrees with Cisco's allegations of "copying" and the Commission's analysis of Arista's intent,[2] those issues simply have no bearing on the appealed issues. They are not relevant to claim construction based on the intrinsic record; statutory construction related to whether the Commission exceeded its authority; or whether substantial evidence supports the Commission's findings about the way the Arista products work for noninfringement of the '597 patent. *See also* Arista's Resp. to Cisco's Mtn. To Make Certain Information Public, Case No. 16-2563, ECF Doc. No. 27, at 16-19.

---

[2] To streamline the appeal, Arista has not challenged every error by the Commission, but this is in no way a concession that the Commission's discussions of alleged "copying" and changes in importation practices are valid. Even the Commission acknowledged that "most, if not all, of the evidence relates to the consultation and copying of ***features not at issue in this investigation***." Appx524 (emphasis added); *see also* Appx13017-13018 (Arista Petition for Review) ("[O]nly one of the ID's nearly twenty citations even mentions Sysdb."). As such, the Commission improperly penalized Arista for lawful activity—the pro-competitive use of unpatented technology. Appx13018-13019. Indeed, the cited evidence mostly relates to allegations about Cisco's command line interfaces (CLIs). *See id.* Those allegations are the subject of a separate copyright infringement suit, in which a jury absolved Arista of any liability. *See Cisco Sys., Inc. v. Arista Networks, Inc.*, Case No. 5:14-cv-05344-BLF(NC), ECF Doc. No. 749, Verdict Form (Dec. 12, 2016).

**NON-CONFIDENTIAL**

Accordingly, Arista asks this Court to recognize these allegations for what they are—an irrelevant distraction.

## REPLY TO THE COMMISSION'S AND CISCO'S RESPONSE

**I.    The Infringement Finding for the '537 Patent Should Be Vacated**

**A.    This Court Should Reverse the Commission's Construction of the "Storing Commands" Limitation**

**1.    Cisco Wrongly Frames the Dispute as Whether the Claims Require Storing Either Router Configuration Data or Commands Supplied by a User**

Perhaps recognizing that its arguments depend on the false premise that Arista's construction precludes the claims from requiring storing router configuration data in the centralized database, Cisco seeks to recast the claim construction dispute.  *See* CiscoBr. at 39.  However, the dispute was never whether the claims *as a whole* require storing either commands supplied by a user or storing router configuration data, but not both.  The dispute was always whether a specific portion of limitations 1a, 10a, and 19c requires storing of commands supplied by a user, when other claim language separately requires storing router configuration data.  Specifically, "configuration commands . . . executed by a router configuration subsystem before being stored in said database" requires storing command supplied by the user, whereas "router configuration data

managed by said database system" requires the router configuration data to be stored in the database. *See* AristaBr. at 28-29; Appx12994.[3]

Arista simply never took the position that its construction of "[c]onfiguration commands . . . executed by a router configuration subsystem before being stored in said database" means that the claims as a whole do not require storing router configuration data.[4] To the contrary, Arista, recognizing the separate requirement, accounted for the centralized database's storing router configuration data in its invalidity allegations.

---

[3] Arista's Pre-Hearing Brief identifies the disputed phrase as "[c]onfiguration commands . . . executed by a router configuration subsystem before being stored in said database," Appx7628, thus reflecting that the question was what is being stored in "said database" due to this particular phrase, and ***not*** what is being stored due to the entire clause "said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database." *See* Appx7628-7629.

Arista's Post-Hearing Brief reiterates that "the parties' dispute what is required to be 'stored in said database'"—i.e., the focus was on that one portion of the limitations. *See* Appx11600; Appx11605. When Cisco attempted to re-frame the issue as whether the claims require storing commands ***instead of*** router configuration data, Arista pointed out Cisco's error. Appx12619 ("Cisco erects a false dichotomy. . . . [T]here is no support . . . for the alleged mutual exclusivity of externally managing router configuration data and storing configuration commands. In fact, just the opposite is true.").

[4] Arista's expert testified that the issue was not whether only commands or only router configuration data could be stored. Appx11023:8-14; Appx11025:13-11026:1; *see also* Appx11027:7-10; Appx12064 n.11.

**NON-CONFIDENTIAL**

For example, in discussing whether a prior art patent discloses "said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database," Arista's expert, Dr. Hollingsworth, explained that the prior art "teaches that a router configuration subsystem receives configuration commands from a user, executes the configuration commands received from the user, and ***stores configuration information in sysDB***."  Appx5657-5658 (Q171) (emphasis added).[5]  Dr. Hollingsworth then separately addressed the requirement that the commands are stored, stating that the prior art "further teaches that the sysDB receives the configuration commands from the subsystems."  Appx5657-5658 (Q171).

It is no surprise, therefore, that Dr. Hollingsworth did not dispute, when asked during deposition, that router configuration data is stored in a centralized database in claim 19.  Appx11024:21-11025:8.  Importantly, limitation 19c, unlike 1a and 10a, specifically recites "***said database*** configured to store router configuration data."  Appx920 at 18:32-33 (emphasis added).[6]

---

[5] *See also* Appx5656 (Q165); Appx5657 (Q167) ("The data required to configure a router is stored in the tuples of the sysDB tree.").

[6] Although Cisco argues Dr. Hollingsworth's deposition testimony supports its incorrect construction, Cisco fails to show that he was referring to the portion of the claim that recites "being stored in ***said database***" (i.e., the dispute on appeal here) rather than the portion that recites "***said database*** configured to store router

9

**NON-CONFIDENTIAL**

The proper construction of "[c]onfiguration commands . . . executed by a router configuration subsystem before being stored in said database" does not detract from the separate requirement, imposed by other claim language, that router configuration data is also stored.  Thus, Cisco's discussion of the specification's disclosure of storing router configuration data in the centralized database is irrelevant.

### 2. Arista's Application of Standard Grammar Rules Remains Unchallenged

Although Cisco dismisses Arista's use of standard grammar rules, "[a] claim must be read in accordance with the precepts of English grammar."  *In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983).  Grammar rules dictate that what is "stored in said database" are commands supplied by the user.  Indeed, the Commission's attempt to explain away at least two commas missing from the claim language demonstrates that the Commission tacitly agrees that the claim language, when read in view of the rules of grammar, requires the storing of commands supplied by the user.  ITCBr. at 33.

Even Cisco does not dispute that Arista has applied grammar rules properly.

---

configuration data."  CiscoBr. at 38.  Cisco's failure even to mention this other requirement of claim 19 speaks volumes about Cisco's ability to do so.  At the hearing, Dr. Hollingsworth unequivocally testified that the portion of the limitation at issue—"[c]onfiguration commands . . . executed by a router configuration subsystem before being stored in said database"—requires storing command supplied by the user.  *See* Appx11024:2-20; Appx11025:13-23.

**NON-CONFIDENTIAL**

*See* CiscoBr. at 35. Cisco agrees that "before being stored in said database" is a modifier that modifies what "immediately precedes it, executed by a router configuration subsystem." *Id.* at 38. Cisco cannot legitimately dispute that the verb in this phrase is the word "executed" and the subject of this verb is the word "commands." Thus the plain language requires what is stored to be the thing that is executed—i.e., commands supplied by a user. *Cf. Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1335-36 (Fed. Cir. 2008) (applying the doctrine of the last antecedent). Cisco cites no source or grammatical principle for its assertion that rules of grammar require "the result of that execution, *i.e.*, the router configuration data, is what is stored in the database." CiscoBr. at 38. The "results of that execution" is not even mentioned in the limitation, which prevents the "before" phrase from modifying "results."

Cisco notably fails to address the reality that its interpretation renders redundant the earlier language in limitations 1a, 10a, and 19c that requires storing configuration data in the centralized database. Cisco focuses on language that appears in only limitation 19c, "said database configured to store router configuration data," CiscoBr. at 36-37, but says nothing about the "router configuration data ***managed by said database system***" requirement and its expert's admission that the concept of "managing" includes storing. *See* Appx10136:24-10137:2, Appx11040:24-11041:2; *see also* Appx1447.

**NON-CONFIDENTIAL**

Cisco argues that "before being stored in said database" refers to when the router configuration data is stored—i.e., after the configuration commands are executed—because "said database being configured to store router configuration data" in claim 19 tells one that router configuration data is stored but not when. CiscoBr. at 36-37. Cisco ignores the other claim language that already requires storage to occur after the user-supplied commands are executed. The parties agree that the claim 19 requires "router configuration data" that is "derived from configuration commands supplied by a user." Cisco maintains that the stored router configuration data is created by the execution of the configuration commands. *Id.* at 37. In other words, without execution of commands, the router configuration data cannot exist.[7]

Logically, the router configuration data cannot be stored before it exists. Therefore, "said router configuration data managed by said database system and derived from configuration commands supplied by the user and executed by a router configuration subsystem" necessarily requires the router configuration data to be stored after it is created via execution of configuration commands. If the rest of this clause—"before being stored in said database"—required router

---

[7] The Commission agrees that execution of commands is a prerequisite to router configuration data. ITCBr. at 35 ("The specification describes the config subsystem as receiving user-entered commands and executing those to create the router configuration information." (internal quotations omitted)).

12

configuration data to be stored after the execution of commands, it would add

nothing to the claim.  *See* Appx5934-5935 (Hollingsworth) (Q91).  Cisco's

interpretation thus improperly renders extraneous the timing aspect of the claim

language "executed by a router configuration subsystem ***before*** being stored in said

database."  *See Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672

F.3d 1270, 1275 (Fed. Cir. 2012) (noting "the importance of construing claim

terms in light of the surrounding claim language, such that words in a claim are not

rendered superfluous").

    Claim 2 also does not support Cisco's argument.  Claim 2 refers to the

"managed by said database system" requirement and not to the portion of the

limitation that recited "before being stored in said database."  Specifically, claim 2

recites "[t]he method of claim 1 further comprising maintaining router

configuration data using a tree structure having a plurality of tuples ***by said***

***database system***."  Appx919 (emphasis added).  In claim 2, "by said database

system" finds its antecedent basis in claim 1's recitation of "said router

configuration data managed ***by said database system***" because it uses the identical

phrase ("said database system"); it does not refer back to the portion of claim 1 that

recites "before being stored in ***said database***," which uses a different phrase ("said

database").  *See Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1343

(Fed. Cir. 2008) ("In grammatical terms, the instances of 'said fabric role' in the

claim are anaphoric phrases, referring to the initial antecedent phrase.").

This conclusion is reinforced because, as Cisco's expert testified, "[m]aintain is really a synonym of manage." Appx10136:24-10137:2. In using the term "maintaining," claim 2 recites details about the way router configuration data is stored in claim 1's recitation of "said router configuration data managed by said database system"—namely, "using a tree structure having a plurality of tuples."

Moreover, the fact that claim 2 refers to only router configuration data as being maintained in the tree structure does not bear on claim 1's separate requirement of user-supplied commands being stored in the centralized database. *See* ITCBr. at 34. Because claim 2 uses the open-end translational phrase "comprising," the fact that it recites storing router configuration data does not mean it cannot store other data, particularly when it does not include language that excludes storing commands. *Crystal Semiconductor Corp. v. TriTech Microelecs., Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed. Cir. 2001).[8] Nor has the Commission identified any language in the '537 patent that says commands are not stored in the centralized database. Thus, contrary to the Commission's assertions, claim 2 does

---

[8] The same is true for "said database configured to store router configuration data" in claim 19. The limitation contains no language that excludes the storing of commands supplied by a user and claim 19 also uses the "comprising" transition phrase. Therefore, contrary to the Commission's assertion, ITCBr. at 32, the fact that claim 19 affirmatively recites that "said database is configured to store router configuration data" does not mean that this database cannot store commands too.

NON-CONFIDENTIAL

not show that "before being stored in said database" refers to router configuration data rather than commands supplied by a user.

Lacking any support in the claim language, Cisco is left with only the argument that storing commands would be superfluous, but cites no evidence to support this bald assertion. CiscoBr. at 38. That is presumably why Cisco also erroneously asserts that Arista did not explain a purpose for storing commands. *Id.* at 39. But Cisco tellingly does not even address the confidential testimony that Arista cited in its brief on this point. *See* AristaBr. at 30 & n.10. And, the testimony of Arista's expert, to which Cisco alludes, further explains "there are quite a number of reasons" to store configuration commands, including "if you had made a mistake in typing a command, if it were stored in the database exactly as typed, it would allow you to go back and make corrections." Appx11060:8-16; *see also* Appx11060:17-11061:4. In any event, Arista does not have to show that the claims recite a purpose for storing commands supplied by the user, only that the claim language, read in light of the rest of the intrinsic record, requires such storage.

Here, the claim language itself, interpreted using ordinary meaning and rules of grammar, compels the conclusion that the claim requires configuration commands to be executed before they are stored in said database.

### 3. Cisco Overlooks the Patent's Disclosure Regarding Sending Commands Supplied by the User to the Database for Storage

As Arista has detailed, the written description teaches that commands supplied by a user are sent to the centralized database and are stored there. *See* AristaBr. at 19-32.

Contrary to Cisco's claim that "when the specification describes what is stored in sysDB, it refers only to various types of configuration data," CiscoBr. at 42, the written description, through the '752 patent incorporated by reference,[9] unambiguously discloses that information other than router configuration data is stored in the centralized database: "The sysDB subsystem preferably employs a hierarchical name space scheme in a tree format (sysDB tree) for data storage and retrieval of configuration and ***other information for the router***." Appx960 ('752 Patent) at 4:16-19 (emphasis added). In light of the multiple disclosures of configuration commands being sent to the centralized database,[10] this "other information for the router" necessarily includes commands supplied by the user.

---

[9] U.S. Patent No. 6,704,752, Appx951-967. *See* Appx902-920 ('537 Patent) at 2:42-49, 13:11-18, 14:44-51. The '752 patent names Pradeep Kathail, the sole named inventor of the '537 patent, as an inventor.

[10] *See, e.g.*, Appx912 ('537 Patent) at 2:51-53 ("The sysDB receives configuration commands from various IOS subsystems."); Appx960 ('752 Patent) at 3:36-38 ("The invention receives configuration commands from a user of a router. The invention then communicates the configuration command to the centralized database system."); *see also* Appx11063:11-21.

**NON-CONFIDENTIAL**

Furthermore, as Cisco and the Commission note, CiscoBr. at 43; ITCBr. at 33, the written description indicates that commands are received and processed by the router configuration subsystem. Appx912 ('537 Patent) at 1:29-30. This disclosure eliminates the possibility that commands are sent to the database for processing. Cisco has never offered an explanation for why the '537 patent sends configuration commands to the centralized database, if not for storage. Given that the core function of a database is storage, Appx912 at 2:51-53, and the absence of any other explanation for why the commands are sent there, the only rational interpretation of the specification is that the commands are sent to the centralized database for storage. Appx11063:11-21 (Hollingsworth stating that disclosure of communicating commands to the database indicates they are "being stored in the database" because "[a] database generally and principally stores information").

Cisco points to the patent's disclosure of "external management of router configuration data, not commands," CiscoBr. at 43, but the discussion of external management of router configuration data is irrelevant to the claim language at issue here—whether "before being stored in said database" modifies "configuration commands" or "router configuration data" in the phrase "**said router configuration data** [1] managed by said database system and [2] derived from **configuration commands** [a] supplied by the user and [b] executed by a router configuration subsystem before being stored in said database." *See*

17

**NON-CONFIDENTIAL**

AristaBr. at 25-26.  Arista has never argued that this limitation, or any part of the claims, requires "command supplied by the user" to be externally managed.

Certainly, the claims require externally managing router configuration data but do so in a portion of the claim completely different than the "before being stored in said database" portion.  For example, limitation 1a recites "said registration request *indicating router configuration data* for which said first managing subsystem is requesting *to provide external management services*" and limitation 1c recites "registering said first managing subsystem *for external management* by said database subsystem."  Appx919 at 15:31-33, 15:39-40 (emphases added); *see also id.* at 16:57-59 (claim 10); Appx920 at 18:27-29 (claim 19).  Cisco's discussion of a separate requirement is a diversion.

Similarly, with respect to the '537 patent's incorporation by reference of other Cisco patents, Cisco discounts their teachings because they purportedly do not disclose external management.  Even if these patents did not disclose "external management," their teachings about the centralized database, sysDB, are still highly relevant.  First, the '537 patent built on the work of these incorporated patents.  *See* Appx5024:12-5026:19 (Kathail); Appx5047:11-21 (same); Appx5029:7-24 (same); Appx5468-5469 (Q22-27); Appx5474-5475 (Q53).[11]

---

[11] This relationship is so close that large sections of the '537 patent, including discussions about sysDB are identical to those in the '752 patent.  *Compare, e.g.*,

**NON-CONFIDENTIAL**

Second, the dispute here relates to what is stored in the centralized database and not what is externally managed.  The '752 patent relates to the centralized database and describes it in great detail.  *See, e.g.*, Appx4958:24-4959:5; Appx4960:22-4961:2, 11-15; Appx5470 (Q31); Appx951-967 ('752 Patent) at 3:36-45, 3:59-5:31.  Accordingly, one must give weight to the '752 patent's discussions of how the centralized database system receives and stores configuration user-supplied commands along with router configuration data.  *See, e.g.*, Appx960 at 3:36-38; *see also* Appx11063:11-21.

Finally, even if the written description did not include disclosure of storing commands supplied by a user, a lack of explicit disclosure would not supersede the unambiguous, plain language of the claims "as written."  *See Chef Am.*, *Inc. v. Lamb–Weston, Inc.,* 358 F.3d 1371 (Fed. Cir. 2004).  Here, the plain language, interpreted using standard grammar rules, compel the conclusion that "before being stored in said database" modified "commands."  To the extent there is any ambiguity, the prosecution history shows unequivocally that Cisco amended the claims to require storing user-supplied commands in the centralized database.

---

Appx915 ('537 Patent) at 7:36–8:27 (describing the centralized database sysDB) *with* Appx963 ('752 Patent) at 9:26–10:16 (same); Appx915-916 at 8:39-9:21 *with* Appx963-964 at 10:19-25, 10:35-11:18; Appx915 at 9:22-27 *with* Appx963 at 10:25-30.

4.    **Cisco Selectively Reads the Prosecution History, Ignoring the Key Aspects that Show Cisco Amended the Claims To Require Storing User-Supplied Commands**

In a tacit admission that it is hanging its success on the "clear and unmistakable disclaimer" hook, Cisco's response does not even try to address Arista's authority that this Court need not find prosecution disclaimer for Cisco's statements during prosecution to inform the proper claim construction. *See, e.g.*, *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1357-58 (Fed. Cir. 2016); *Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015); *see also* Arista's Br. at 37-38 & n.15. This case is not one where the Commission's construction restates the meaning plain on the face of the claim language; rather, at best, the claim language leaves open the question of whether the phrase "before being stored in said database" modifies the recited commands or data. Therefore, the prosecution history here is valuable evidence of what the limitation means, without resort to disclaimer, especially because the limitation was added by amendment. *See In re Papst Licensing Digital Camera Patent Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015); *Bd. of Regents of Univ. of Tex. Sys., v. BENQ Am. Corp.*, 533 F.3d 1362, 1369 (Fed. Cir. 2008).

Even if the doctrine of prosecution disclaimer applies, the Commission erred in finding no clear and unmistakable disclaimer. Cisco's prosecution statements, both on their face and in the context of the continuing prosecution, were

unmistakable—the examiner would not allow the claims reciting only storage of data,[12] or with the relevant limitation added[13] and the storage of data argued,[14] but would allow them only with the limitation recited ***and*** the argument concerning the storage of data and the storage of commands.[15] *See* AristaBr. at 32-38.

When Cisco discusses the prosecution, it cherry picks portions without taking into account the progression of arguments that ultimately led the examiner to allow the claims. For example, Cisco points to the argument that Ciscon does not disclose the storing of configuration data in a database, which it advanced in the penultimate office action response. CiscoBr. at 44. Cisco notably does not consider the succeeding events.

In particular, the examiner rejected Cisco's attempt to distinguish the claims from Ciscon because "Ciscon does teach router configuration data as stored in a database." Appx1520; Appx1538. Then, in its final office action response, Cisco argued that the "Examiner ***partially*** addresses this claim limitation and pastes

---

[12] Claim 19 as filed with the application includes the limitation "a database operatively coupled to said database subsystem, said database structured and configured to store router configuration data." Appx1103; Appx10116:6-18, 10124:19-25.

[13] Cisco added the limitation "said router configuration data managed by said database system and derived from configuration commands supplied by a user and executed by a router configuration subsystem before being stored in said database." Appx1523; Appx1526; Appx1530.

[14] Appx1521.

[15] Appx1564.

previous rejections." Appx1564 (emphasis added). Critically, the argument that the examiner addressed only part of the added limitation appears in the midst of the two opening paragraphs that emphasized, for the first time, the execution ***and storage*** of commands supplied by a user, and immediately after Cisco bolded the portion of the limitation that recites "executed by a router configuration subsystem before being stored in said database." *Id.* Indeed, in the very next sentence after complaining that the examiner only partially addressed the added limitation, Cisco explains that "Ciscon fails to disclose teach or otherwise suggest ***executing configuration commands before storing them in a database***." *Id.* (emphasis added).[16] Given that, in the prior response, Cisco unsuccessfully attempted to distinguish the prior art based on the storing of router configuration data, Appx1520-1521; Appx1538, the "partially addresses" language is evidence that, in these paragraphs, Cisco relied on something different to distinguish the claims— namely, storing user-supplied commands.

Contrary to the Commission's assertion, ITCBr. at 40-41, the immediately following two paragraphs further demonstrate that Cisco was distinguishing the newly amended claims from the prior art based on a lack of storing commands.

---

[16] This statement is not an "awkwardly phrased" assertion that Ciscon fails to disclose storing router configuration data in a database, CiscoBr. at 46, but rather a clear and unmistakable representation that storing commands in the database is one of the reasons why the newly added limitation made the pending claims patentable. The words "router configuration data" do not appear anywhere in the paragraph.

Here, Cisco attempted to distinguish commands from the "objects" described in the prior art by referring to specific portions of the Ciscon prior art reference that the examiner had cited. Appx1564-1565. Ciscon describes "objects" and their properties and structure as ***data objects*** that are used in the exchange and ***storage of information***. *See* Appx937 at 5:7-10 ("[T]he combination of the structure of data and its associated properties is referred to as a data object. Data objects thus form the fundamental unit of exchange between the routers 212, 216 and 232.").

In its previous office action response, Cisco attempted to distinguish Ciscon by arguing that it does not disclose storing router configuration data because the Ciscon data objects are not router configuration data. Appx1521 (addressing the "S-OBJECT," "S_PROPERTY," "S_ADDRESS," and "S_DEST" objects). But this time, Cisco argued that the Ciscon objects' structures, i.e., the organization of the data in a data object, Appx936-937 at 4:65-5:2, "are not commands, and can in no way be construed to be equivalent to router configuration commands." Appx1565; *see also* AristaBr. at 13. Because Ciscon's data objects are used to store data, Cisco's argument that their structures are not commands shows that Cisco distinguished Ciscon by emphasizing again the reference's lack of disclosure of command storage.

This office action response does not even mention "router configuration data" until its last substantive paragraph. Appx1565 ("Finally, . . . ."). Even in this

last paragraph, Cisco focused on storing configuration commands, arguing that

"the novelty here is that this claim limitation provides a way to incorporate a

database into ***managing user-supplied configuration commands***." *Id.* When read

in context of the preceding sentence and paragraphs, this sentence describes the

novelty as incorporating a database to ***manage user-supplied configuration***

***commands*** which are executed to derive router configuration data that is also

stored a database. Cisco's own expert testified that the concept of "managing"

includes storing. *See* Appx10136:24-10137:2, Appx11040:24-11041:2. Therefore,

"incorporating a database into managing [which includes storing] user-supplied

configuration commands" refers to storing such commands in the database. *See*

11058:3-11059:2 (Hollingsworth).

In arguing that this phrase means something else—"techniques for using a

database to manage the data derived from the user supplied configuration

commands," CiscoBr. at 47—Cisco brazenly rewrites its statements to the Patent

Office. This rewrite yields the nonsensical result of the same statement being

rephrased three times in a row.[17]

---

[17] Under Cisco's rewrite, the topic sentence, and the first and second clauses in
the second sentence would describe the same thing—the execution of the
configuration commands to derive router configuration data that is stored a
database.

**NON-CONFIDENTIAL**

Even if one were to accept Cisco's rewrite, *arguendo*, this argument about the novelty is, as Cisco admits, a "distinct argument," separate from its prior statements. CiscoBr. at 46. Recall that the examiner had rejected an earlier attempt to distinguish Ciscon based on storing router configuration data in a database. Appx1520-1521; Appx1538-1539. Cisco's recycling of this prior argument does not detract from the new argument Cisco made earlier in the response that "Ciscon fails to disclose teach or otherwise suggest executing configuration commands before storing them in a database." Appx1564. In arguing that other arguments were the ones that actually secured allowance, Cisco disregards the settled principle that "the interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner actually relied on them, or how much weight they were given." *Fenner*, 778 F.3d at 1325. Accepting Cisco's position would gouge the public notice function of the patent and its prosecution history. *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003).

The entirety of the prosecution history shows, without a doubt, that Cisco made multiple arguments in support of patentability—over the course of ten office action responses in over six years—but did not convince the Patent Office to allow the claims until it argued that the centralized database stores not only router configuration data, but also configuration commands supplied by a user. *See*

NON-CONFIDENTIAL

AristaBr. at 32-35.[18]  Therefore, the prosecution history conclusively shows that "before being stored in said database" refers to "commands supplied by a user" and the limitation requires the database to store the commands.

### B.    The Commission's Infringement Finding Should Be Vacated

The parties agree that, if this Court reverse the construction of the "storing commands" limitation, it must vacate the infringement finding and remand the case for the Commission to evaluate infringement under the proper construction.

## II.    The Remedial Orders Exceed the Commission's Authority

### A.    Arista Did Not Waive the Argument that the Commission's Orders Cannot Cover Imported Articles That Do Not Infringe

There is no waiver here.  Arista sought a ruling that the Components do not infringe the '537 patent at every stage of the proceedings below, repeating that argument in at least six different briefs.[19]  To prove noninfringement, Arista

---

[18] It would be wrong to put weight on the Notice of Allowability's failure to call out the portion the claim requiring storing commands.  Statements made by the Examiner regarding the reasons for allowance generally do not impact claim scope. *See Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1346 (Fed. Cir. 2005) (noting the rejection of the "argument that a statement in the examiner's Reasons for Allowance governed the construction of the claim term at issue").  This rule is particularly apt here where the Examiner explains that the identified claim limitations, "in addition to the rest of the claim limitations," distinguished the claims from the prior art, Appx1593, and Cisco itself responded to the Notice, disputing that it identified all of the reasons that the claims were patentable, Appx1610.

[19] *See, e.g.*, Appx7666-7668; Appx11919-11925; Appx12744-12747; Appx13020-13024; Appx13404-13412; Appx13735-13739.

NON-CONFIDENTIAL

introduced evidence of the Components' design, *see* Appx6087-6092, Appx6104-6114, as well as expert testimony explaining why the Components do not infringe the '537 patent's claims directly, contributorily, or by inducement in view of the recited limitations, *see* Appx5982. Arista could hardly have done more to put the Commission squarely on notice "that it must decide the issue" of whether the Components infringe. *See* CiscoBr. at 51 (quoting *Wallace v. Dep't of Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989)).

Furthermore, Arista's position that the Components could not be excluded if they do not infringe was unmistakable. Arista stated that "no exclusion order or cease and desist order should apply to Arista components and subassemblies because they do not infringe." *See, e.g.*, Appx11897; Appx12735. Arista's economics expert testified that an exclusion order should extend to only "unfair acts" and not to components that do not infringe. Appx19366-19368 (Q130, Q135-41). And more importantly, there would have been no point for Arista to seek a specific ruling that the Components do not infringe, if the Commission could simply exclude them regardless of infringement.

Indeed, the basic point that the Components could not be excluded if they do not infringe was never disputed. Cisco argued that the Components infringe the '537 patent, not that the Commission need not decide whether the Components

27

infringe because they should be excluded either way.[20]  *See, e.g.*, Appx12378-12379; Appx12902-12907.  Likewise, the ALJ found that the Components infringe the '537 patent, *see* Appx680-681, and recommended that the Commission issue an LEO covering "products and components thereof that infringe," *see* Appx12959, thus tying the remedy to "articles that . . . infringe" according to his findings.  The ALJ did not find it irrelevant whether the Components infringe, nor did he recommend that the Commission exclude them regardless of infringement.  In view of the ALJ's findings, Arista's briefing before the Commission focused on explaining why the ALJ was wrong to conclude that the Components infringe.

Cisco's argument that Arista somehow deprived the Commission of an opportunity to consider its authority under Section 337 is puzzling.  *See* CiscoBr. at 50.  The Commission directly addressed that issue in response to Arista's arguments and concluded that it can exclude the Components whether or not they infringe, to prevent supposed "circumvention."  *See* Appx527.

Finally, Arista was not required to seek reconsideration to preserve its appeal rights.  As an initial matter, it is unclear what Cisco believes reconsideration would have accomplished, when the Commission had already decided it could exclude "components thereof" without finding they infringe.  *See* Appx527.

---

[20] As a result, if any party waived its arguments about the Commission's authority to exclude noninfringing components, it is Cisco.

**NON-CONFIDENTIAL**

Regardless, parties adversely affected by a Commission determination are not required to seek reconsideration.[21]  The Commission's rules state a party "may" petition for reconsideration; they do not state that a party must do so to exhaust administrative remedies or preserve appeal rights.  19 CFR § 210.47.  In addition, Section 337 permits a party to appeal a Commission determination, without requiring it to seek reconsideration before doing so.  19 U.S.C. § 1337(c); *cf. In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1377 (Fed. Cir. 2016) (in *inter partes* review context, where the rules state that a party "may" request rehearing, holding a party may appeal directly, without moving for rehearing).

Cisco's cited case, *Camelot Terrace, Inc. v. NLRB*, 824 F.3d 1085 (D.C. Cir. 2016), does not provide otherwise.  There, the appellant failed to raise the issue at all when it was before the agency, both before the agency's determination and after in a motion for reconsideration.  *Id.* at 1092.[22]  Here, Arista preserved the argument below and was not required to move for reconsideration to raise it on appeal.

### B.    The Commission Did Not Find that the "Components" Infringe

Cisco tries mightily to serve up an infringement finding relating to the Components, but there is clearly none with respect to the '537 patent.  Indeed, the Commission expressly avoided that issue, stating:

---

[21] The Commission notably does not make this argument.

[22] The governing statute provided that the appeals court had no jurisdiction to decide arguments not raised below.  *Id.*; 29 U.S.C. § 160(e).

NON-CONFIDENTIAL

> Although Arista argues that each of the imported components must also be material to the invention, the Commission *need not reach* this issue. If Arista attempts to ***circumvent a Commission remedy by importing only the components*** of the accused products for reassembly into complete functional switches, it ***would still be in violation of section 337*** because the Commission finds that the Blank Switches and the fully assembled complete switches indirectly infringe and the accused switch components are covered by this finding.

Appx527 (emphases added). This passage could not be read as finding that the Components infringe contributorily, since the Commission expressly declined to decide whether they are a "material part of the invention." *See* 35 U.S.C. § 271(c). Instead, its plain import is that the Commission "need not reach" whether the Components themselves infringe because its indirect infringement finding as to fully-assembled switches meant it could issue a remedy that addresses Components as well.

Cisco points to the Commission's next sentence, which states that it "affirms the ID's finding that Cisco established contributory infringement." That is true because the Commission found contributory infringement as to fully-assembled hardware. Appx526-527. But, it cannot be read as affirming the ID's finding that the Components contributorily infringe because, again, the Commission expressly

declined to reach that issue.[23]  *See* Appx527.

The Commission likewise did not find that the Components induce infringement.  It found only that "Arista's sale and promotion of its accused products, including the Blank Switches, constitute acts of induced infringement." Appx528.  The Commission defined and used "accused products" for the '537 patent to mean fully-assembled switches, not Components.  *See* Appx512 (defining accused products as "Arista's 7010, 7048, 7050, 7050X, 7150, 7250X, 7280E, 7300, 7300X, and 7500E series switches").[24]  In contrast, the Commission did not define "switch hardware" but used that term more generically to mean either assembled switches or components of assembled switches.[25]  *See* Appx511.  When

---

[23] Similarly, the generic statement at the outset that the Commission "adopts the ID's findings that are consistent with this opinion," Appx508, does not override the Commission's specific analysis and findings with respect to contributory and induced infringement.  Where relevant to specific parts of its analysis, the Commission states that it "adopts the ID's findings consistent with this opinion" later in its analysis.  *See* Appx518, Appx520, Appx534, Appx543-544, Appx547, Appx551, Appx554.  In addition, the ID's findings that the Components infringe the '537 patent contributorily and by inducement are not "consistent with" the Commission's Opinion because the Commission expressly addresses those issues and affirms the ID's findings only as to fully-assembled switches.

[24] S*ee also* Appx527 (referring to the Components as "components of the accused products").

[25] Likewise, the Commission's including Dr. Almeroth's testimony regarding switch hardware within a string citation does not mean it found that the Components to induce infringement.  *See* ITCBr. at 47.  In the cited page ranges, Dr. Almeroth discusses FDLs that would be present in both fully-assembled and component "switch hardware."  Appx5570-5572.  What is important is the Commission's conclusion from the cited evidence, which was that the sales and promotion of fully-assembled hardware induces infringement.

the Commission referred to "switch hardware" in the second sentence of its inducement analysis for the '537 patent, it plainly used that term in the former sense (assembled switches), since the preceding, topic sentence of that paragraph states that the Commission's overall inducement finding was as to "accused products" (assembled switches) with or without EOS.  *See* Appx528.

The Commission's brief attempts to backfill the Commission Opinion, *see* ITCBr. at 47-48, asserting that "switch hardware" in its inducement analysis refers to the Components because the ID supposedly defined "switch hardware" as "includ[ing] all the individual components, such as a processor, memory, CPU card, chassis, switch card, and fan modules."  Appx682.  But, given the Commission Opinion's failure to define "switch hardware" and its meager 5-sentence induced infringement analysis, the Commission's reference to "switch hardware" (without defining it) cannot possibly qualify as a finding that importing the Components induces infringement.  *See Secs. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted [are] clearly disclosed and adequately sustained.").  The Commission had the opportunity to address whether and how the importation of Components induces infringement and

failed to do so.[26]  It would be improper to allow the agency to supplement its

opinion via its appeal brief.  *Cf. Action on Smoking & Health v. Civil Aeronautics*

*Bd.*, 713 F.2d 795, 799 n.2 (D.C. Cir. 1983) ("When the required explanation of

the agency's action is totally absent, or 'palpably inadequate,' it is difficult to see

how a subsequent explanation by the agency on remand could be characterized as

anything other than a wholly *post hoc* rationalization.").

Finally, the Commission's markedly different approach for the '592 and

'145 patents ("PVLAN patents") reinforces this point.  There, the Commission

made explicit findings about assembled switches (with or without EOS) **and** the

Components.[27]  Appx551.  The Commission made no comparable finding that

"components thereof" infringe the '537 patent.  Thus, the Commission reviewed

---

[26] Indeed, if the Commission's argument were accepted, the Commission's inducement paragraph would fail to "articulate a satisfactory explanation for its action" with respect to the Components, as required by the Administrative Procedure Act, *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and the remedial orders would have to be vacated, *see, e.g.*, *In re Nuvasive, Inc.*, No. 2015-1670, 2016 WL 7118526, at *5-6 (Fed. Cir. Dec. 7, 2016) (vacating a decision where the agency failed to provide a reasoned basis for its action and remanding for additional findings and explanations).

[27] The Commission's findings the Components infringe the PVLAN patents do not make this issue moot.  The issue is whether Section 337 authorizes the Commission to exclude Components (and make them subject to its cease and desist order) **based on the '537 patent**, without ever finding that they infringe that patent. *See, e.g.*, AristaBr. at 2.  Arista's streamlining the appeal by not including issues related to the PVLAN patents does not mean the Commission's flawed remedial orders with respect to the '537 patent should stand.

the ID's inducement findings, and affirmed them only as to fully-assembled

hardware, not the Components.[28]

### C.  The Commission's Discretion To Fashion Remedies Does Not Permit It To Exceed the Statute

Cisco posits that, because the Commission is authorized to deal with the

importation of "articles that . . . infringe," it has the discretion to fashion whatever

remedy it deems appropriate both (a) to exclude the infringing articles themselves,

and (b) to prevent "circumvention" of its orders.  The Commission also focuses on

"circumvention" for its alleged authority "to prevent Arista from importing

components for the purposes of reassembly into an infringing article."  ITCBr. at

50-51; *see also, e.g.*, *id.* at 52 ("reassemble those pieces into completed articles"),

53 ("when those articles are reassembled from imported components").  Cisco's

and the Commission's arguments are flawed for several reasons.

---

[28] The Commission's comments as to contributory infringement further show that it did not find the Components to induce infringement.  If the Commission had so found, it would have said that it "need not reach" whether the Components infringe contributorily because they induce infringement, so they can be excluded.  Instead, it said that it "need not reach" contributory infringement because its indirect infringement findings as to fully-assembled hardware would allow it to exclude the components too.  Appx527.

NON-CONFIDENTIAL

1.     **The Overly Broad Orders Improperly Prevent Legitimate Commerce**

First, the Commission's exclusion of noninfringing Components does not just prevent "circumvention." It bars Arista from importing components for even other, noninfringing uses.[29] As any respondent faced with a potential exclusion order would be wise to do, Arista developed a technical design-around that, regardless of the merits of Cisco's infringement allegations as to the software version in the Investigation, indisputably takes Arista's EOS software outside the scope of the '537 patent. Yet, the Commission's LEO on the Components placed the burden on Arista to prove that its redesign did not infringe, before it could import the Components. *See* Appx557 n.19; *Eaton Corp. v. United States*, 395 F. Supp. 2d 1314, 1326-28 (Ct. Int'l Trade 2005) (holding products subject to exclusion cannot be imported upon a respondent's certification that they have been redesigned and are noninfringing, until the Commission or Customs makes a formal determination of noninfringement).

---

[29] Cisco says that the exclusion order "***does not*** stop the importation of power supplies, fans, and other components ***for other purposes***," CiscoBr. at 52-53 (original emphases), but its actions belie this assertion. Cisco has asserted in a newly-filed proceeding that "Arista has violated . . . [the CDO] by . . . [*inter alia*] selling . . . imported products or components," Complaint at ¶ 2.3, *Certain Network Devices, Related Software and Components Thereof (I)*, Inv. No. 337-TA-944 (Enforcement) (USITC Aug. 26, 2016), even though Arista is now selling redesigned products, *id.* at ¶ 8.3. *See also id.* at ¶ 7.1, ¶ 8.2.

**NON-CONFIDENTIAL**

Although Arista has now received a ruling from Customs that its redesigned EOS software does not infringe the '537 patent,[30] and Arista's products are thus no longer subject to exclusion, the Commission's exclusion order prevented Arista from importing the Components into the U.S. for almost three months.[31]  In addition, contrary to the Commission's assumption, the remedial orders are not so narrowly-tailored as to prevent importation of only components used for "reassembly"—i.e., assembling an entire switch abroad, taking it a part, importing all of its pieces into the U.S., and then putting it back together.  On its face, the LEO barred Arista from importing even one noninfringing component that is used in a domestically-manufactured switch.  The Commission does not have authority to regulate the importation of noninfringing components that are to be used in connection with subsequent U.S. manufacturing operations.

Thus, an exclusion order that covers noninfringing "components thereof" has impacts well beyond preventing "circumvention."  It also hinders legitimate commerce in noninfringing components and products.  Even assuming the Commission had authority to exclude fully-assembled switches until Arista proved

---

[30] *See* Ruling Request; U.S. International Trade Commission; Limited Exclusion Order; Investigation No. 337-TA-944; *Certain Network Devices, Related Software and Components Thereof*, HQ H277148, *available at* http://rulings.cbp.gov/hq/2016/h277148.doc (last accessed Dec. 9, 2016).

[31] Arista's Components were excluded from August 23, 2016 to November 16, 2016.  *See id.*; Appx567-571 (LEO).

the validity of its redesign (because fully-assembled switches were held to infringe), it went too far in extending the remedial order to Components not held to infringe.

Furthermore, excluding noninfringing Components is not necessary to prevent "circumvention." As explained in Arista's opening brief, the availability of district court remedies serves as a deterrent from using the Components for an infringing purpose in the U.S. *See* AristaBr. at 52-53.

> ### 2.    The Commission's Discretion To Fashion an Appropriate Remedy Cannot Expand Its Statutory Authority

Any discretion that the Commission has to fashion an appropriate remedy must be exercised within its statutory authority to address importations of "articles that . . . infringe." That is precisely what this Court held in *Kyocera*, 545 F.3d 1340. There, the issue was whether the Commission had authority to issue a LEO that excluded the products of nonrespondents. The Commission made many of the same arguments it does here. The Commission argued that it has discretion in selecting remedies (citing *Viscofan* as it does here), and that its decision to exclude nonrespondents' products was reasonable because it was necessary to provide "a practical, effective" remedy. Brief of Appellee ITC at 71-72, *Kyocera*, 545 F.3d 1340 (No. 2007-1493) ("*Kyocera* ITCBr."). This Court rejected the Commission's remedy because Section 337 did not authorize it. *Kyocera*, 545 F.3d at 1355-58.

**NON-CONFIDENTIAL**

Cisco's cited cases do not hold that the Commission has discretion to exclude articles that do not infringe. *See* CiscoBr. at 54-55. *Federal Trade Commission v. Ruberoid Co.*, 343 U.S. 470, 473 (1952), involved an FTC proceeding and remedy. Although this Court has analogized to FTC remedies for the general principle that, like the FTC, the ITC has discretion to fashion remedies for Section 337 violations, *Ruberoid* has no bearing on the ITC's specific authority to address "articles that . . . infringe" under its enabling statute, Section 337.

In *Hyundai Electronics Industries Co., Ltd. v. International Trade Commission*, this Court merely affirmed the Commission's discretion to issue an exclusion order with a certification provision allowing a respondent to import products by certifying that they did not contain the infringing EPROM chips. 899 F.2d 1204, 1209 (Fed. Cir. 1990). Thus, the provision at issue in *Hyundai* permitted, not blocked, the importation of products that do not infringe.

In *Suprema, Inc. v. International Trade Commission*, the court noted that the goods subject to an exclusion order going forward are not the exact physical goods found to infringe because an ITC investigation necessarily involves goods that were imported in the past. 796 F.3d 1338, 1349 (Fed. Cir. 2015) (en banc). Nevertheless, the court stated that exclusion orders are designed to prevent importations of articles similar to those previously found to infringe. *Id.* at 1349. *Suprema* does not address whether such "similar articles" include articles for

38

which the Commission made no infringement findings, even though the respondent put that issue squarely before it, like Arista did here.

Finally, Cisco's reliance on *Viscofan, S.A. v. International Trade Commission*, 787 F.2d 544 (Fed. Cir. 1986), is also misplaced.  That case involved an investigation of "unfair acts" under Section 337(a)(1)(A), as the rights at issue were trade secrets, so it does not directly address the Commission's authority to exclude "articles that . . . infringe" patents under Section 337(a)(1)(B).  *Id.* at 546-47.  Moreover, the rationale behind *Viscofan* does not apply here.  There, the Commission held that the manufacturing process the respondent used to make its products relied on misappropriated trade secrets.  *Id.*  As a result, the Commission issued an order excluding the products.  *Id.*  The respondent argued for a remedy that would permit it to import the products if it switched to a different manufacturing process that did not use the trade secrets, opened its plant for Commission inspection, and certified that its importations were made using the redesigned manufacturing process.  *Id.* at 549.  The Commission declined that remedy because it had "neither the jurisdiction nor means to conduct plant inspections in Spain."  *Id.*  Although the Federal Circuit affirmed the Commission's remedy, it noted the respondent could import products if it "demonstrate[d] to the Commission's satisfaction that it has developed and will

continue to use manufacturing processes totally untainted by the trade secrets it

misappropriated." *Id.* at 550.

Thus, the principle this Court applied in *Viscofan* is consistent with *Eaton*, in

that once a violation is found as to a particular article, a respondent cannot import

the article simply by certifying that it has implemented a redesign. *See Eaton*, 395

F. Supp. 2d. at 1326-28. Instead, the respondent must come forward with evidence

of the redesign, and prove to the Commission that the articles do not violate the

intellectual property rights at issue.

The remedy here is very different from *Viscofan* and *Eaton*. Here, the

Commission expressly declined to consider Arista's evidence that the Components

do not infringe, finding it "need not consider" that evidence because it could

exclude the Components regardless of whether they infringe. *Viscofan* does not

give the Commission license to refuse to make a finding of whether an imported

article is one "that . . . infringe[s]," but to exclude it nonetheless.

### 3.    The Commission's Longstanding Error Cannot Be an End-Run Around Its Statutory Authority

That the Commission has a "longstanding practice" of excluding

"components thereof" without finding they infringe does not mean it has the

statutory authority to do so. The Commission made the same argument in

*Kyocera*, based on its "longstanding agency practice." *Kyocera* ITCBr. at 71. This

Court gave the Commission no deference because its practice exceeded the plain

language of Section 337.  *See Kyocera*, 545 F.3d at 1358.  No deference is appropriate here, for the same reason.

Furthermore, a past practice of excluding "components thereof" generally would not justify the Commission's remedy in this Investigation.  Here, each Component was independently an imported "article" at issue, and Arista introduced evidence of noninfringement for each.  The Commission's past practice does not justify refusing to make an infringement finding as to Components that are independent imported articles, when the issue is squarely presented to it.

### D.   This Court Should Provide Guidance on the Standards for Indirect Infringement for Application on Remand

In remanding the case, this Court should instruct the Commission as to the legal standards for contributory and induced infringement.  Doing so is in the interest of judicial economy and is not an improper advisory opinion, as Cisco suggests.  *See, e.g., Regents of Univ. of Cal. v. Dakocytomation Cal., Inc.*, 517 F.3d 1364, 1379 (Fed. Cir. 2008) (reaching issue that was likely relevant on remand "interest of judicial efficiency").[32]

---

[32] Cisco argues that *Regents* is inapplicable because there, the district court had addressed the relevant issue below.  CiscoBr. at 69 n.1.  But here too, the Commission addressed the standards for contributory and induced infringement, and committed legal error in doing so.  Appx525-527; Appx549-552.  Cisco's two cited cases are merely examples where the Court has remanded a case for consideration of an issue for the first time below.  *See In re Varma*, 816 F.3d 1352, 1365 (Fed. Cir. 2016); *Phillips v. Shinseki*, 581 F.3d 1358, 1368 n.4 (Fed. Cir.

**NON-CONFIDENTIAL**

As to contributory infringement, Cisco is wrong that Arista reads a novelty requirement into the statute. The statute states that an accused component must be a "material part of the ***invention***," 35 U.S.C. § 271(c) (emphasis added), thus requiring an analysis of whether the component is significant to the invention that merits patent protection. Cisco is the one seeking to rewrite the statute, from "material part of the ***invention***" to "material part of the ***product***" accused of infringement. Nothing in the language of the statute or its legislative history warrants changing the focus from the invention to the accused product.

The cases Cisco cites concerning the "material part of the invention" requirement do not provide otherwise. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Arris Group, Inc. v. British Telecomms.*, *PLC*, 639 F.3d 1368 (Fed. Cir. 2011). In *Lucent*, the appeal dealt with the separate requirement of no "substantial noninfringing use." 639 F.3d at 1317. The decision does not discuss the "material part of the invention" requirement, and there is no indication it was in dispute. *Id.* at 1320-21. In *Arris*, the issue was whether the patentee had made enough of an ***allegation*** of contributory infringement to establish declaratory judgment jurisdiction. 639 F.3d at 1373. It had made a presentation to one of Arris's customers, alleging direct infringement. *Id.* at 1376-

---

2009). They do not limit the Court's authority in any way to provide guidance on the law for the Commission to apply on remand.

77.  The court found the presentation could also be construed as an allegation of contributory infringement by Arris because its "extensive focus" on Arris's products "implies that Arris' products are being used as a 'material part' of the allegedly infringed invention."  *Id.* at 1378.  Thus, *Arris* concerns only whether a patentee had gone far enough to "imply" that a component was a "material part of the invention" for declaratory judgment jurisdiction, not what one must show to prove that requirement.

As to inducement, Cisco and the Commission focus on the wrong issue. They focus more broadly on Arista's overall conduct, and whether ***Arista*** is an induced infringer by providing switches with the accused software features and encouraging the use of those features.  *See, e.g.*, CiscoBr. at 71-72; ITCBr. at 59-60.  Unlike in a district court, that is not the question here.  The ITC's jurisdiction is to determine whether specific imported articles, here the Components, are "articles that . . . infringe."  Thus, inducement at the ITC must focus on whether the importation of the specific articles at issue encourages (induces) infringement. *See* AristaBr. at 46-47 (citing *Suprema*).

Here, the Components are basic building blocks of network switches, such as metal chassis, fans, and power supplies, that have no connection to the software functionality (Sysdb) Cisco alleges to infringe.  Cisco argues that the Components

are designed to run EOS,[33] but EOS is not what allegedly infringes.  Rather,

Cisco's infringement allegations are based on the Sysdb functionality, and Cisco

does not appear to dispute that the Components are not designed for that specific

functionality.  Cisco and the Commission fail to explain how importations of

Components—that have no connection whatsoever to the invention—could

possibly be held to actively encourage infringement of that invention.  This Court

should correct the Commission's misunderstanding of the role of inducement law

in Section 337 proceedings.

Finally, although Arista vigorously disagrees with Cisco's allegations of

"copying" and the Commission's analysis of Arista's intent, those issues are

simply not relevant to this appeal.  As an initial matter, the Commission based its

indirect infringement findings only on willful blindness and did not find that Arista

actually intended to cause direct infringement.  Appx522.  Moreover, the

Commission's analysis of willful blindness was flawed because, unlike in *Global-*

*Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2067 (2011), there is no

---

[33] Components like power supplies, fans, bare PCBs, and chassis unquestionably
do not run EOS.  *See, e.g.*, Appx6091 (Q15).  Recognizing this fact, Cisco speaks
of FDLs, but misrepresents their operation.  CiscoBr. at 19, 66; ITCBr. at 13.
FDLs do not allow EOS to "control" of "configure" the Components.  FDLs are
merely identifying information that enables EOS to identify the underlying
hardware.  *See* Appx6085-6086 (Q135-40).  FDLs are not restricted to EOS; they
can be used in connection with any software.  *See* Appx6085-6086 (Q132, Q140);
Appx5977-5978 (Q147-48).

evidence that Arista developed Sysdb by referencing Cisco products or that Arista took any active steps to avoid learning of infringement.  *See, e.g.*, Appx522-524. Instead, the Commission based its findings on soundbites taken out of context that have nothing to do with Sysdb, and on the fact that Arista did not affirmatively monitor Cisco's patent portfolio, even though there is no legal requirement to do so.[34]  *See id.*; Appx13019-13020.

Regardless, this appeal concerns the legal issue of whether the Commission must consider the relationship of the Components to the alleged infringement—in particular, the lack of any such relationship—in the analysis of contributory and induced infringement.  The evidence relied on for specific intent, including Cisco's allegations of "copying," are nothing more than a distraction.

## RESPONSE TO CISCO'S CROSS-APPEAL

## COUNTERSTATEMENT OF THE ISSUES

1.    Does substantial evidence support the Commission's finding that the accused Arista products do not detect a change in configuration?

2.    In the event that this Court reverses the finding of noninfringement, should it reverse the Commission's decision to apply the doctrine of assignor estoppel to the legal issue of invalidity under 35 U.S.C. § 101 and remand the case

---

[34] Cisco itself maintains it would be infeasible.  *See* Appx4116.

NON-CONFIDENTIAL

to the Commission to decide whether the claims of the '597 patent are invalid under § 101?

## COUNTERSTATEMENT OF THE CASE AND FACTS

### I.    The '597 Patent

The '597 patent generally relates to a network security system for detecting and sending alerts of suspicious activity.  Appx14342 ('597 Patent) at 2:21-30.  To address remote security threats, the '597 patent describes a "logging module," which is a generic processor and memory unit, that is coupled to a subsystem in a communication device.  Appx14342-14345 at 2:21-38; 7:10-53, Fig. 2.  The '597 patent describes detecting a change in the configuration of a communications device and communicating information regarding that change, as the detected change in configuration indicates a possible security attack or susceptibility to one. Appx14342-14343 at 2:33-58, 3:43-4:5.

### II.    The Accused Technology—ProcMgr

Cisco accused a feature of Arista's EOS referred to as ProcMgr, which has nothing to do with network security.  Arista's EOS software is generally partitioned as "agents," each designed to provide a particular functionality.  During operation, any number of agents may be running on EOS.  To assist in agent operation, EOS includes ProcMgr, which is not an EOS agent, but rather a software process designed to start, stop, and restart agents.  Unlike agents which

rely on Sysdb, ProcMgr by design cannot access Sysdb.  *See* Appx6070-6071,
Appx6018.

As a result, ProcMgr cannot read the agents' configuration files or check the
configuration of the agents.  *See* Appx6070-6071 (Q48-50); Appx6030-6032
(Q270-73).  Indeed, ProcMgr is intentionally designed to be separate from both the
agents and Sysdb, which stores the agents' configuration.  *See* Appx6070-6071,
Appx6018.  In addition, ProcMgr does not communicate with any EOS agent
regarding the agents' configuration.  Appx6070.  ProcMgr does not and cannot
know the agents' configuration as stored in Sysdb.  *See* Appx6070-6071 (Q48-50);
Appx6030-6032 (Q270-73).

Three mechanisms within ProcMgr are relevant to this appeal: (1) ███

███████ (2) ProcMgr's █████, and (3) ProcMgr's ███████



███████ Appx538.  The █████████ consists of ProcMgr's

████████████████

Appx541.  Each agent has a █████ that will █████████████

███████ when ███████ properly.  *Id.*; Appx10258:19-10259:2;

Appx10261:17-23; Appx10279:12-25.  However, when ███████ has

███████████ a prescribed amount ███, ProcMgr ███ that

something ███.  Appx541.  However, ProcMgr does not know why ███

47

failed ▮▮▮▮▮▮; it can determine only the last ▮▮▮▮▮

was ▮▮▮. *Id.*

▮▮▮▮▮ has stopped, ProcMgr then ▮▮▮▮▮,

using ▮▮▮▮▮▮ associated with that ▮▮▮

▮▮▮. Appx713; Appx6070 (Q47); *see also* Appx10262-10265.  As with ▮▮

▮▮▮▮▮ is merely ▮▮▮▮▮ something is present or

absent—here, ▮▮▮▮▮▮. *Id.*

Finally, ProcMgr's ▮▮▮▮▮ consists of a set ▮

▮▮▮▮▮. Appx542-543.  Because ProcMgr cannot

access ▮▮▮▮▮, *see* Appx6070-6071, Appx6018,

ProcMgr consults ▮▮▮▮▮▮

▮▮▮▮. Appx542-543.  These files contain information on how

ProcMgr should start each agent, how ▮▮▮▮▮, and

which ▮▮ should be ▮▮▮. *Id.*  These ▮▮ are not used ▮▮▮▮,

however, as ▮▮▮ all receive their ▮▮▮▮▮. *Id.*

## SUMMARY OF THE ARGUMENT

The Commission correctly found that ProcMgr cannot detect a change to a configuration of any agent.  In disputing these factual findings, Cisco focuses on instances where ProcMgr infers, but does not detect, the state of an agent.  Cisco appears to be dissatisfied with its earlier, strategic decision not to try to construe

**NON-CONFIDENTIAL**

"detect" to encompass concepts outside of its ordinary meaning, but Cisco has

waived any such claim construction.  On the facts, the Commission thoroughly

examined the three operations that Cisco claims meet the limitation, and cited

substantial evidence that none detects a change in configuration of an agent.

Therefore, Cisco cannot meet the high burden to overturn the Commission's

factual findings and this Court should affirm the decision of no violation.

## ARGUMENT

### I.    Substantial Evidence Supports the Commission's Finding of No Infringement of the '597 Patent

#### A.    The Standard of Review Is Substantial Evidence

Cisco challenges the Commission's finding that ProcMgr does not detect a

change to a configuration of said subsystem (which Cisco identified as an agent,

CiscoBr. at 33).  Accordingly, Cisco must show that the Commission's factual

finding of no infringement lacks substantial evidence.  *See, e.g.*, *Tessera, Inc. v.

Int'l Trade Comm'n*, 646 F.3d 1357, 1364 (Fed. Cir. 2011).

In an improper effort to avoid this standard, Cisco attempts to draw a false

dichotomy between "detection" and "inference" under the guise that the

Commission misapplied its construction.  To the extent Cisco's argument is a

veiled claim construction argument—i.e. that the term "detect" should be

construed to include the different concept of "inferring"—this argument is waived.

Cisco did not identify the term "detect" for construction before the ALJ and it is

too late to do so now.  *See* Appx13141-13142 & n.1.  Moreover, Cisco waived any

claim construction arguments relating to the '597 patent by not challenging the

construction in its brief.

Even if it were procedurally proper, Cisco's attempt to cast distinct

concepts—"indirectly detecting" and "inferring"—as synonymous is incorrect.

Whether "directly" or "indirectly," the concept of detecting something requires

determining its true nature or characteristic.  In contrast, whether "directly" or

"indirectly," the concept of inferring something is to speculate or surmise by

reasoning.  As the Commission aptly noted, "Cisco's argument boils down to

whether an inference that there may have been a change in the operating status of

the subsystem is synonymous with detecting a change to a configuration—it is

not."  ITCBr. at 61.

### B.    The Noninfringement Finding Finds Ample Record Support

Cisco points to three mechanisms within ProcMgr that allegedly satisfy the

limitation of detecting a change in configuration: (1) ⬛⬛⬛, (2)

ProcMgr's ⬛⬛, and (3) ProcMgr's ⬛⬛.  ITCBr. at 24-25;

Appx538.  Substantial evidence supports the Commission's finding of no violation

with respect to each of these methods.

First, the evidence shows that ProcMgr's ⬛⬛ to

determine whether an agent's ⬛⬛ does not constitute

50

NON-CONFIDENTIAL

"detecting" whether the subsystem's configuration has changed.  ITCBr. at 20; Appx6071 (Q51-Q53).  As the Commission correctly found, the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ constitutes ProcMgr *inferring* the agent's status.  Appx541-542; Appx14376.  Importantly, through this ▮▮▮▮▮▮▮, ProcMgr could infer that the agent is malfunctioning when, in fact, the agent is working properly. Appx19305 ("The ▮▮▮▮▮▮▮ even when the agent is not hung and is making progress."); Appx6071 (Q51).  Thus, ProcMgr does not detect a change in configuration of the agent when its ▮▮▮▮▮▮▮.

Second, ProcMgr's use of the ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ is to determine ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ ITCBr. at 65.  This process cannot detection a change in the configuration of an agent because the agent's configuration is stored ▮▮▮▮ and not in ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮.  Appx6070-6071 ("Configuration for agents are stored ▮ ▮▮▮▮"); Appx10264:2-5 ("[T]he agents don't ▮▮▮ [sic] ▮▮▮▮▮▮▮ ▮▮▮  That's done by the operating system."); *see also* Appx713; Appx6070-6071 (Q48-50).

Finally, substantial evidence supports the Commission's finding that the third mechanism—the ▮▮▮▮▮▮▮—does not detect a change in configuration.  ProcMgr's ▮▮▮▮▮▮▮ consists of a set ▮



Appx542-543. ProcMgr consults ▮

▮

Appx542-543; Appx11272:21-25, Appx11288:13-11289:21 (Hollingsworth). As

noted by the Commission, Cisco incorrectly attempts to rely on an internal Arista

document describing ProcMgr's ▮ method to argue Arista's

documents support Cisco's position. ITCBr. at 66-67. As the ALJ and

Commission found after reviewing this same evidence, "the cited document

discusses ProcMgr ▮ (i.e., ▮

▮)." *Id.*; *see also* Appx713-

714; Appx507; Appx542-543; Appx6071 (Q48-50).

The Commission evaluated all of this evidence and correctly found that the

three mechanism do not detect a change in configuration of an agent's

configuration. Appx541-543. Because Cisco has not met its burden to show that

these factual findings are not supported by substantial evidence, this Court should

affirm the finding of no violation with respect to the '597 patent.

## C. The Components Do Not Infringe the '597 Patent

Even if the Court were to reverse the Commission's noninfringement finding

as to ProcMgr, it should affirm that the Components do not infringe the '597 patent

because they are not a "material part of the invention." As Arista's expert testified,

the Components are generic network switch components, such as metal chassis,

fans, and power supplies, and they have no material relationship to the invention of the asserted '597 patent claims, which relates to detecting a change to a subsystem and communicating information about the change. *See* Appx6038-6043 (Q293-294, Q297-302). Indeed, Cisco's infringement allegations focus on the ProcMgr software functionality, not on any of the underlying hardware that is used to run ProcMgr or to house, cool, or power the switch. Cisco alleged only that the Components are a "material part of the invention" because they are necessary for EOS (including ProcMgr) to run, and because they are allegedly designed for and used exclusively with EOS. But, as explained, even if true those theories of contributory infringement are legally insufficient. *See* AristaBr. at 54-58. The evidence does not show the Components are a "material part of the invention" of the '597 patent or they are even part of the invention, and thus they do not infringe contributorily. *See* Appx13066 n.48; Appx11897-11925; Appx12744-12747.

Similarly, Arista's importation of Components also does not induce infringement because they have no connection to the alleged infringement as to encourage it. *See* Appx6038-6043 (Hollingsworth) (Q293-294, Q297-302). Even if Arista were held to induce infringement by selling switches with ProcMgr and encouraging customers to use ProcMgr, that conduct is domestic. Nothing about the imported "articles" themselves (e.g., metal chassis, fans, and power supplies) encourages infringement. *See* AristaBr. at 58-61. As a result, Arista does not

induce infringement by way of the specific acts of importing Components.  *See*

Appx13066 n.48; Appx11897-11925; Appx12744-12747.

## II.    The Commission Erred by Not Reaching the Issue of Invalidity under 35 U.S.C § 101 based on the Doctrine of Assignor Estoppel

An alternative ground exists for affirming the Commission's finding of no

violation:  the '597 patent is not directed to patentable subject matter.  The

Commission improperly declined to take up the patent-eligibility issue, holding—

wrongly—that the doctrine of assignor estoppel barred any review of patent

eligibility.  Appx544.  Had it done so, the plain defects in the '597 patent would

have mandated a conclusion of invalidity due to patent-ineligibility.

### A.    The '597 Patent Cannot Survive Section 101 Review

The asserted claims of the '597 patent would fail any application of the two-

step test of *Alice*, 134 S. Ct. 2347.  At step one, the '597 patent's claims address

the plainly abstract notion of first detecting a change in configuration, and then

communicating information regarding that change.   *See id.* at 2355.  Such is

immediately apparent from even cursory review of the claims, of which claim 39 is

representative.  The claims recite no more than "detecting" something, then

"communicating" about it:

> 39. A method comprising:
>    detecting a change in a configuration of a subsystem of a
>       communications device wherein a logging module is coupled to
>       said subsystem and said detecting is performed at the logging
>       module; and

**NON-CONFIDENTIAL**

> communicating information regarding the change comprises causing
> said logging module to communicate the change information.

Appx14342 at 16:45-53.  "This ordered combination of steps recites an abstraction—an idea, having no particular concrete or tangible form." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

The concept of detecting a status change and communicating when a change has occurred is so fundamental and abstract that the inventor himself ***expressly acknowledged that the claimed steps could be performed entirely by humans***. *See* Appx14342 at 9:64-65 ("[O]perations discussed herein may consist of directly entered commands by a computer system user."), 10:37-39 ("Each of the blocks of the flow diagrams depicted herein may be executed by . . . a computer system user.").  This Court has repeatedly taken human-performance of claim steps as powerful evidence of abstractness.  *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094-95 (Fed. Cir. 2016); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  Furthermore, nothing about the '597 claims indicates a limitation to improving the operation of specific computer technology, as in *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. Nov. 29, 2016).  Therefore, it is beyond legitimate dispute that the '597 claims address an abstract idea, as they address only the same data-collection and data-presentation activities found abstract in *FairWarning* and elsewhere.

NON-CONFIDENTIAL

Nor could the '597 claims survive the second *Alice* step, assessing whether they contain an "inventive concept" sufficient to transform the abstract idea into a patentable invention. *Alice*, 134 S. Ct. at 2355-57. As detailed to the Commission below, none of the asserted claims presents any "inventive concept" that supports patentability. Appx11721-11724. The claims' various references to a "logging module" or other similar features is insufficient to confer patent-eligibility, as they do no more than use preexisting technology (i.e., generic computer equipment) for its intended purpose. *See, e.g.*, *Alice*, 134 S. Ct. at 2359; *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318-19 (Fed. Cir. 2016). Therefore, the '597 claims are invalid.

## B.    Assignor Estoppel Should Not Have Proscribed Patent-Eligibility Review

Despite the clearly-unpatentable nature of the claims of the '597 patent, the Commission determined it "need not reach [the issue of patentability under 35 U.S.C. § 101] and takes no position on the ID's findings for this issue." Appx544. The "Commission determined not to review the ID's findings that assignor estoppel applies to Arista," and thus concluded that this finding prevented Arista from making any challenges to validity—including under Section 101. *Id.*

Arista is unaware of any decisions from this Court or the Supreme Court directly addressing the question of whether assignor estoppel will countenance a plainly-ineligible patent being asserted in litigation. In briefing below, Cisco relied

on *dicta* in cases applying assignor estoppel outside of the context of Section 101 and pre-*Alice*.  Appx13275.  But, as recent law makes clear, patent-eligibility is a threshold issue that must be satisfied before a court can even consider other validity issues such as non-obviousness.  *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (describing the Section 101 analysis as "a threshold test"); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347–48 (Fed. Cir. 2015) (noting that Section 101 inquiry may precede claim construction); *In re Comiskey*, 554 F.3d 967, 973 (Fed. Cir. 2009) ("Only if the requirements of Section 101 are satisfied is the inventor allowed to pass through to the other requirements for patentability[.]").  As such, patent-eligibility should be unaffected by assignor estoppel.[35]

 Courts have found other threshold legal issues to be outside the scope of the assignor estoppel doctrine.  *See Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249, 257 (1945) (finding assignor estoppel does not apply to determining the expiration date of a patent); *Univ. of W. Va. Bd. of Trustees v. VanVoorhies*, 278 F.3d 1288, 1301 (Fed. Cir. 2002) (finding assignor estoppel does not apply to challenges to the validity of the assignment contract itself).  Patent laws "preclude us from saying that the patent assignment . . . operates to estop the assignor from

---

[35] In presenting this argument, Arista neither concedes nor appeals the continued viability of assignor estoppel as a doctrine in any context outside of subject-matter eligibility challenges.

**NON-CONFIDENTIAL**

asserting that which the patent laws prescribe," *Scott Paper*, 326 U.S. at 257, which includes the scope of patentable subject matter.

This Court should not extend the doctrine of assignor estoppel to preclude an inventor from seeking to invalidate a patent under Section 101 because such an extension would be inconsistent with the policy underlying the doctrine and the strong public policy in invalidating bad patents.

First, it has been proposed that assignor estoppel is a bulwark against information asymmetries in connection with patent prosecution, but such considerations do not apply in the patent eligibility context. *See Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed. Cir. 1988) ("[Assignor estoppel] was rooted in the notion of fair dealing."). However, both the assignor and assignee are equally capable of understanding the patent eligibility laws, and of making assessments about the patent-eligibility of the claimed invention. In such cases, assignor estoppel does not protect against an information asymmetry because no such asymmetry exists. Furthermore, unlike other circumstances where assignor estoppel has been held to apply, in the context of a patent eligibility challenge, the assignee does not rely on any representations of the assignor, only the plain text of the applied-for or issued claims.[36] When both the assignor and assignee have equal

---

[36] Here, Dr. Cheriton made no representations in his assignment or his Patent Office declaration regarding the legal question of patent eligibility. Appx19374; Appx14249-14250.

**NON-CONFIDENTIAL**

knowledge about the patent's validity under Section 101, application of assignor

estoppel creates an unfair deal because it automatically allocates the risk of

subsequent changes in the law to the assignor instead of the new patent owner.

   Second, assignor estoppel should not apply to challenges under Section 101

given the strong public policy interest in invalidating dubious patents.  *See Lear,*

*Inc. v. Adkins*, 395 U.S. 653, 665-66 (1969) ("[T]he policy of the patent laws

would be frustrated if a manufacturer was required to pay for the use of

information which, under the patent statutes, was the property of all.").  The

Court's decisions in *Bilski*, *Mayo*, and *Alice* have significantly modified the law of

patent eligibility which requires applicants to overcome a higher threshold.  *See*

*Bilski v. Kappos*, 561 U.S. 593, 607 (2010) ("If a high enough bar is not set when

considering patent applications of this sort, patent examiners and courts could be

flooded with claims that would put a chill on creative endeavor and dynamic

change."); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289,

1300 (2012) ("[S]imply appending conventional steps, specified at a high level of

generality, to . . . abstract ideas cannot make those . . . ideas patentable."); *Alice*,

134 S. Ct. at 2360 ("[T]he claims at issue amount to 'nothing significantly more'

than an instruction to apply the abstract idea. . . [which] is not 'enough' to

transform an abstract idea into a patent-eligible invention.").

**NON-CONFIDENTIAL**

Because the policy of fair dealing is not implicated for patent eligibility challenges, especially given the change in the law since the '597 patent's assignment, assignor estoppel should yield to the public policy of invalidating dubious patents for the public's benefit.  Therefore, if this Court reverses the Commission's finding of no infringement, Arista respectfully requests that this Court reverse the Commission's decision to apply the doctrine of assignor estoppel to the legal issue of invalidity under Section 101 and remand for the Commission to evaluate patent eligibility.

## CONCLUSION

Regarding the '537 patent, Arista respectfully asks this Court to reverse the Commission's claim construction, vacate the finding of infringement, vacate the remedial orders (including specifically as they cover Components), and remand the case.  Regarding the '597 patent, Arisa asks this Court to affirm the finding of noninfringement, but if that finding is reversed, reverse the Commission's decision to apply assignor estoppel and remand the case for a decision on invalidity under Section 101.

**NON-CONFIDENTIAL**

Dated: April 26, 2017                    Respectfully submitted,

                                          /s/ *Lauren A. Degnan*

                                          Ruffin B. Cordell
                                          Michael J. McKeon
                                          Lauren A. Degnan
                                          Linhong Zhang
                                          FISH & RICHARDSON P.C.
                                          The McPherson Building
                                          901 15th Street, 7th Floor
                                          Washington, D.C. 20005
                                          Tel: 202-783-5070

                                          Brian P. Boyd
                                          FISH & RICHARDSON P.C.
                                          1180 Peachtree Street, 21st Floor
                                          Atlanta, GA 30309
                                          Tel: 404-892-5005

                                          *Counsel for Appellant Arista Networks, Inc.*

NON-CONFIDENTIAL

## CERTIFICATE OF SERVICE

I certify that on April 26, 2017, I electronically filed the foregoing

Corrected Response and Reply Brief of Appellant using the Court's CM/ECF

filing system.  Counsel for appellee were electronically served by and through

the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(a)

and 25(b).


*/s/ Lauren A. Degnan*
Lauren A. Degnan

NON-CONFIDENTIAL

**CERTIFICATE OF COMPLIANCE**

The Corrected Response and Reply Brief of Appellant is submitted in accordance with the type-volume limitation of Rule 32(a)(7)(B) of the Fed. R. App. P.  The Brief contains 13,991 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Fed. Cir. R 32(b).  This Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman, 14 Point.

Dated:  April 26, 2017          */s/ Lauren A. Degnan*
                                Lauren A. Degnan

**NON-CONFIDENTIAL**

## CERTIFICATE OF COMPLIANCE FOR BRIEFS
## CONTAINING MATERIAL SUBJECT TO A PROTECTIVE ORDER

The Corrected Response and Reply Brief of Appellant complies with the limitations set forth in Fed. Cir. R. 28(d). The Brief contains a total of two (2) unique words, excluding words that were marked confidential for the first time in the immediately preceding briefs filed by Cisco Systems, Inc. and/or the International Trade Commission, to which this brief responds. If any additional redactions of words currently marked confidential in the immediately preceding briefs are removed pursuant to the Court's January 31, 2017 Order, Arista will recertify this Brief's compliance with Fed. Cir. R. 28(d).


Dated:  April 26, 2017          */s/ Lauren A. Degnan*
                                 Lauren A. Degnan